ORDER

On Petition for Rehearing En Banc
PER CURIAM.
Appellants/eross-appellees’ joint petition for rehearing en banc and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon consideration of the foregoing, it is
ORDERED that the petition be denied.
A statement by Circuit Judge PILLARD, joined by Circuit Judges ROGERS and WILKINS, concurring in the denial of rehearing en banc, is attached.
A statement by Circuit Judge BROWN, joined by Circuit Judge HENDERSON, dissenting from the denial of rehearing en banc, is attached.
A statement by Circuit Judge KAVANAUGH, dissenting from the denial of rehearing en banc, is attached.
PILLARD, Circuit Judge, joined by ROGERS and WILKINS, Circuit Judges, concurring in the deniafof rehearing en banc:
A majority of the court has voted to deny the petition for rehearing en banc in this case. In two thoughtful opinions, Judge Kavanaugh, and Judge Brown joined by Judge Henderson, dissent from that denial. The panel’s opinion speaks at length to the issues they take up. The panel members write further only to underscore why our court’s approach accords with the Supreme Court’s decision in Burwell v. Hobby Lobby Stores, Inc., — U.S. -, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).
The dissenters and we agree that the Religious Freedom Restoration Act provides robust protection for religious liber *2 ty — 'without regard to whether others might view an adherent’s beliefs or practices as irrational, trivial, or wrong. Nothing in our opinion should be seen to detract from that vital guarantee. Where we part ways is that the dissenters perceive in Hobby Lobby a potentially sweeping, new RFRA prerogative for religious adherents to make substantial-burden claims based on sincere but erroneous assertions about how federal law works. They believe we ignored that prerogative here. The dissenters read more into the Supreme Court’s decision than it supports. Hobby Lobby embraced adherents’ claim about the religious meaning of the undisputed operation of a federal regulation; this case involves a claim that courts must credit religious adherents’ incorrect assertions about how a different federal regulation operates. Because Hobby Lobby did not address that distinct issue, we see no conflict.
The Court in Hobby Lobby invalidated the requirement that closely-held, for-profit businesses with religious objections to contraception nonetheless must buy health-insurance coverage for their employees that pays for contraception, or else face taxes or penalties. 134 S.Ct. at 2759. No opt out was available to those businesses. The parties in Hobby Lobby did not dispute what the law required, nor its practical effects: All agreed that the Affordable Care Act regulations mandated that employer-sponsored health plans include contraception, and that as a result plaintiffs’ employees got access to contraception paid for, in part, by their employers. See id. at 2762. What the parties in Hobby Lobby contested were the moral and religious implications of the businesses’ conceded role. The plaintiff business owners believed that “providing the coverage demanded ... is connected to the destruction of an embryo in a way that is sufficient to make it immoral for them to provide the coverage.” Id. at 2778. The government disagreed, contending that employees’ intervening choices whether to use contraception broke the chain of moral culpability, and hence the law did not substantially burden the businesses’ religious exercise. Id. at 2777-78.
In rejecting the government’s position in Hobby Lobby, the Supreme Court emphasized that courts may not second-guess religious beliefs about the wrongfulness of facilitating another person’s immoral act. Id. at 2778. RFRA forbids courts from “providing] a binding national answer to ... religious and philosophical question[s]” or “tell[ing] the plaintiffs that their beliefs are flawed.” Id.; see also id. at 2779 (“[I]t is not for us to say that [plaintiffs’] religious beliefs are mistaken or insubstantial. Instead, our ‘narrow function in this context is to determine’ whether the line drawn reflects ‘an honest conviction.’ ” (alteration marks omitted) (quoting Thomas v. Review Bd., 450 U.S. 707, 716, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981))). The context makes clear that the Court’s discussion of facilitation simply restates the basic tenet of the religious freedom cases that judges may not question the correctness of a plaintiffs religious beliefs.
That reasoning is inapplicable here. The dispute between the government and the Plaintiffs in this case, unlike in Hobby Lobby, is not about religious implications of acknowledged — but perhaps attenuated — support for contraceptive use; the parties disagree here about how the law functions, and therefore whether there is any causal connection at all between employers’ opt-out notice and employees’ access to contraception. Plaintiffs challenge the accommodation, not available in Hobby Lobby, based on their assertion that what causes their employees to receive contraceptive coverage is their compliance with the accommodation’s precondition that *3 they give notice of their sincere religious objections to such coverage. As Plaintiffs characterize it, their act of excusing themselves from legal liability for not providing contraceptive coverage is what made such coverage available to employees, and hence violated their Catholic faith.
We held that Plaintiffs miscast the accommodation. The regulation allows Plaintiffs to continue to do just what they did before the ACA: notify their insurers of their sincere religious objection to contraception, and arrange for contraception to be excluded from the health insurance coverage they provide.[1] As before, insurers may sell plans that exclude contraception to their religious-nonprofit customers. The difference is that now the ACA and its regulations require that contraceptive coverage be provided to all insured women. In the case of women who get their insurance coverage through an accommodated employer, the law requires insurers to offer the women contraception under a separate plan — completely segregated from the objecting employer’s plan and its payments.
The judges who urge us to rehear the case say that Hobby Lobby leaves no room for us to question Plaintiffs’ characterization of how the challenged regulations operate, including their assertions that the regulations force Plaintiffs to facilitate the provision of contraception. As they read it, Hobby Lobby forbids a court deciding a claim under RFRA to assess whether a plaintiffs belief about what a law requires him to do is correct. See, e.g., Kavanaugh Dissent at 17-19; Brown Dissent at 9-10. Both dissents argue that Hobby Lobby’s discussion of facilitation requires us simply to accept whatever beliefs a RFRA plaintiff avows — even erroneous beliefs about what a challenged regulation actually requires.
Neither the holding nor the reasoning of Hobby Lobby made that leap. RFRA understandably accorded Hobby Lobby Stores a victory in a contest over what religious meaning to ascribe to the Stores’ payment for contraceptive coverage. That holding does not require us to credit Priests for Life’s legally inaccurate assertions about the operation of the regulation they challenge. See Univ. of Notre Dame *4 v. Burwell, 786 F.3d 606, 611-12 (7th Cir.2015); see also id. at 622-23 (Hamilton, J., concurring). But see id. at 627-28 (Flaum, J., dissenting). O.ur panel opinion explains that it is the mandate on insurers that causes Plaintiffs’ employees to receive contraceptive coverage, and not anything Plaintiffs are required to do in claiming their accommodation. The panel thus held that Plaintiffs suffered no substantial burden triggering RFRA strict scrutiny.
The dispute we resolved is legal, not religious. Under the ACA regulations, a woman who obtains health insurance coverage through her employer is no more entitled to contraceptive coverage if her employer submits the disputed notice than if it does not. The ACA obligation to provide contraceptive coverage to all insured women does not depend on that notice. Nothing in RFRA requires that we accept Plaintiffs’ assertions to the contrary.
RFRA protects religious exercise. In no respect do we, nor could we, question Plaintiffs’ sincere beliefs about what then-faith permits and forbids of them. But we can and must decide which party is right about how the law works. We concluded that the regulation challenged in this case does not, as a matter of law or fact, give Plaintiffs’ conduct the contraception-facilitating effect of which they complain. Indeed, it bears emphasis that the whole point of the challenged regulation is to scrupulously shield objecting religious nonprofits-from any role in making contraception available to women. The accommodation is itself evidence of the fundamental commitment of this Nation to religious freedom that RFRA embodies. The regulation is, of course, properly subject to judicial scrutiny to verify that it comports with governing law, including Hobby Lobby. Because we conclude that it does, we believe that en banc review is not warranted in this case.

. Judge Kavanaugh is perplexed as to why, if not for an impermissible reason, the government requires any form at all. Kavanaugh Dissent at 19-20 & n. 5. The form is far from “meaningless,” id., because it acts as “the written equivalent of raising a hand in response to the government's query as to which religious organizations want to opt out,” and extricates those objectors in a manner consistent with the contraceptive coverage requirement. Priests for Life v. U.S. Dep’t of Health & Human Servs., 772 F.3d 229, 250 (D.C.Cir.2014). Only once an insurer becomes aware of the employer’s religious objection can it take the steps needed to effectuate the opt out, such as: exclude contraceptive coverage from the employer’s group health plan, prevent the employer’s payment from funding contraception, notify the beneficiaries that the employer plays no role in administering or funding contraceptive coverage, and arrange for separate mailings and accounting. Id. (citing regulatory provisions). Judge Kavanaugh would hold that including the insurer’s identity in the form is unnecessarily restrictive of religious exercise because, extending our metaphor, he says it requires the objecting employer “both to raise its hand and to point to its insurer.” Kavanaugh Dissent at 25 n. 11. But it is more apt to say that, if the employer opts to raise its hand where the insurer cannot see it (i.e. via the alternative notice delivered to the government rather than the insurer, see 45 C.F.R. § 147.131(c)(1); 29 C.F.R. § 2590.715-2713A(b)(l)(ii)), the government must be in a position promptly to communicate the religious objection to the insurer, or else the employer’s insurance plan will continue to include contraceptive coverage. An insurer that is kept in the dark about an employer’s religious objections cannot do what it must to honor the opt out.