# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 14-20112

————

EAST TEXAS BAPTIST UNIVERSITY; HOUSTON BAPTIST UNIVERSITY,

Plaintiffs–Appellees,

WESTMINSTER THEOLOGICAL SEMINARY,

Intervenor Plaintiff–Appellee,

versus

SYLVIA MATHEWS BURWELL, in her official capacity as
Secretary of the United States Department of Health and Human Services;

THOMAS PEREZ, in his official capacity as
Secretary of the United States Department of Labor;

JACOB J. LEW, in his official capacity as
Secretary of the United States Department of Treasury;

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;

UNITED STATES DEPARTMENT OF LABOR;

UNITED STATES DEPARTMENT OF TREASURY,

Defendants–Appellants.

————

Appeal from the United States District Court
for the Southern District of Texas
No. 4:12-CV-3009

————

* * * * * * * * * * * * * *

————

No. 14-10241

————

UNIVERSITY OF DALLAS,

Plaintiff–Appellee,

versus

SYLVIA MATHEWS BURWELL, in her official capacity as
   Secretary of the United States Department of Health and Human Services;

THOMAS PEREZ, in his official capacity as
   Secretary of the United States Department of Labor;

JACOB J. LEW, in his official capacity as
   Secretary of the United States Department of Treasury;

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;

UNITED STATES DEPARTMENT OF LABOR;

UNITED STATES DEPARTMENT OF TREASURY,

Defendants–Appellants.

————

Appeal from the United States District Court
for the Northern District of Texas
No. 4:12-CV-314

————

* * * * * * * * * * * * * *

————

No. 14-40212

————

CATHOLIC DIOCESE OF BEAUMONT;

CATHOLIC CHARITIES OF SOUTHEAST TEXAS, INCORPORATED,

Plaintiffs–Appellees,

versus

SYLVIA MATHEWS BURWELL, in her official capacity as
Secretary of the United States Department of Health and Human Services;

THOMAS PEREZ, in his official capacity as
Secretary of the United States Department of Labor;

JACOB J. LEW, in his official capacity as
Secretary of the United States Department of Treasury;

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;

UNITED STATES DEPARTMENT OF LABOR;

UNITED STATES DEPARTMENT OF TREASURY,

Defendants–Appellants.

————

Appeal from the United States District Court
for the Eastern District of Texas
No. 1:13-CV-709

————

* * * * * * * * * * * * * *

—————

No. 14-10661

—————

CATHOLIC CHARITIES, DIOCESE OF FORT WORTH, INCORPORATED,

Plaintiff–Appellee,

versus

SYLVIA MATHEWS BURWELL, in her official capacity as
    Secretary of the U.S. Department of Health and Human Services;

THOMAS PEREZ, in his official capacity as
    Secretary of the U.S. Department of Labor;

JACOB J. LEW, in his official capacity as
    Secretary, U.S. Department of Treasury;

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;

UNITED STATES DEPARTMENT OF LABOR;

UNITED STATES DEPARTMENT OF TREASURY,

Defendants–Appellants.

—————————————

Appeal from the United States District Court
for the Northern District of Texas
No. 4:12-CV-314

—————————————

ON PETITION FOR REHEARING EN BANC
(Opinion June 22, 2015, 793 F.3d 449)

Before REAVLEY, SMITH, and GRAVES, Circuit Judges.

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED. The court having

been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED.

In the en banc poll, 4 judges voted in favor of rehearing (Judges Jones, Clement, Owen, and Elrod), and 11 judges voted against rehearing (Chief Judge Stewart and Judges Jolly, Davis, Smith, Dennis, Prado, Southwick, Haynes, Graves, Higginson, and Costa).


ENTERED FOR THE COURT:


_____/s/___Jerry E. Smith_____
JERRY E. SMITH
United States Circuit Judge



\* \* \* \* \* \* \*



JONES, Circuit Judge, joined by CLEMENT and OWEN, Circuit Judges, dissenting from Denial of Rehearing En Banc,

This case goes to the heart of religious liberty protected by the Religious Freedom Restoration Act ("RFRA"). That the panel's decision, like those of other circuit courts, rejects these religious institutions' free exercise of their faith is ironic and tragic. How ironic that this most consequential claim of religious free exercise, with literally millions of dollars in fines and immortal souls on the line, should be denied when nearly every other individual religious freedom claim has been upheld by this court. How tragic to see the humiliation of sincere religious practitioners, which, coming from the federal government and its courts, implicitly denigrates the orthodoxy to which their

lives bear testament.   And both ironic and tragic is the harm to the Judeo-Christian heritage whose practitioners brought religious toleration to full fruition in this nation.   Undermine this heritage, as our founders knew, and the props of morality and civic virtue will be destroyed.[1]   As an example to other courts, ours should have corrected the panel's grave error en banc.

Because much has been written about these particular issues in a clear Eighth Circuit opinion[2] and several elegant dissents,[3] we add only a few points.

The panel opinion denied religiously affiliated institutions' RFRA challenge to the "accommodation" provided by HHS in administering the Affordable Care Act ("ACA").   Under RFRA, the federal government may sustain a regulation against the claim that it substantially burdens a person's

---

[1] George Washington, Farewell Address to the People of the United States (Sept. 19, 1796) ("Of all the dispositions and habits which lead to political prosperity, religion and morality are indispensable supports. In vain would that man claim the tribute of patriotism who should labor to subvert these great pillars of human happiness, these firmest props of the duties of men and citizens.   The mere politician, equally with the pious man ought to respect and to cherish them."); Letter from John Adams to Zabdiel Adams (June 21, 1776), *in* 9 THE WORKS OF JOHN ADAMS, SECOND PRESIDENT OF THE UNITED STATES 401 (Charles Francis Adams ed. Little, Brown & Co. 1854) ("[I]t is religion and morality alone, which can establish the principles upon which freedom can securely stand. The only foundation of a free constitution is pure virtue.").

[2] *Sharpe Holdings, Inc. v. U.S.  Dep't. of Health & Human Servs.*, ___ F.3d ___, 2015 WL 5449491 (8th Cir. Sept. 17, 2015).

[3] *Grace Sch. v. Burwell*, ___ F.3d ___, 2015 WL 516784, at * 17 (7th Cir. Sept. 4, 2015) (Manion, J., dissenting); *Little Sisters of the Poor Home for the Aged v. Burwell*, ___ F.3d ___, 2015 WL 5166807, at *1 (10th Cir. Sept. 3, 2015) (Hartz, J., dissenting from denial of rehearing en banc) (joined by Kelly, Tymkovich, Gorsuch, and Holmes, J.J.); *Priests for Life v. U.S. Dep't of Health & Human Servs.*, ___ F.3d ___, 2015 U.S.App. LEXIS 8326, at *15, *42 (D.C. Cir. May 20, 2015) (Brown, J. and Kavanaugh, J., dissenting from denial of rehearing en banc); *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151, 1208 (10th Cir. 2015) (Baldock, J. dissenting); *Univ. of Notre Dame v. Burwell*, 786 F.3d 606, 626 (7th Cir. 2015) (Flaum, J., dissenting); *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*,756 F.3d 1339, 1340 (11th Cir. 2014) (Pryor, J., specially concurring).

exercise of religion only if the government demonstrates a compelling interest and adopts the least restrictive means to further the interest. 42 U.S.C. § 2000bb-1(a), (b). The ACA requires covered employers to provide health care insurance that includes emergency contraceptive services.[4] Only last year, the Supreme Court applied RFRA to exempt a corporation owned by sincere religious believers who opposed the contraceptive mandate from complying with the requirement. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).

The HHS "accommodation" offered in this case requires each religiously affiliated institution to fill out forms that effectuate contraceptive insurance coverage for their employees without direct payments by the institutions. These institutions assert, without dispute, that complying with the "accommodation" violates their sincerely held religious beliefs that they would become morally complicit in furnishing services that involve the destruction of human life at or shortly after conception. Also undisputed is that if they fail to comply with the "accommodation," they will incur millions of dollars in fines. The panel concluded, however, that the acts the institutions are required to perform "do not include providing or facilitating access to contraceptives." *E. Tex. Baptist Univ. v. Burwell*, 793 F.3d 449, 459 (5th Cir. 2015). The panel simply disagreed with the institutions' view of what Christian theology demands. Finding no "substantial burden" on the institutions' religious exercise if they fill out the required forms, the panel never addressed the government's compelling interest or whether the "accommodation" is the least restrictive means to furnish insurance for emergency contraceptive services.

---

[4] 42 U.S.C. § 300gg-13(a)(4); Group Health Plans and Health Insurance Insurers Relating to Coverage of Preventative Services Under the Patient Protection and Affordable Care Act, 77 Fed. Reg. 8725, 8725-26 (Feb. 15, 2012). Department of Health and Human Services regulations specifically exclude religious employers, such as churches and synagogues, from this mandate. 45 C.F.R. § 147.131.

Based on this court's precedents, this should have been an easy case for upholding religious liberty. Within the past decade, this court has acknowledged that a substantial burden was placed on a person's religious exercise in nine claims under RFRA or related federal and state statutes;[5] this court denied only one claim that affected prison security, a compelling interest. The nine claims involved possession of eagle feathers for Native American worship; a Sikh's wearing a 3-inch kirpan (dagger); a Native American prisoner's possession of a lock of hair; a Muslim inmate's beard; long hair on a Native American high school student; Santeria practitioners' keeping and slaughtering four-legged animals; kosher food in prison; worship in a particular prison setting; and possession of stones by Odinists in prison.[6] In

---

[5] *See* 42 U.S.C. § 2000cc-1(a)(1) (Religious Land Use and Institutionalized Persons Act); Tex. Civ. Prac. & Rem. Code § 110.003(a), (b) (Texas Religious Freedom Restoration Act).

[6] *See, e.g.*, *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 472 (5th Cir. 2014) (finding that a federal law prohibiting possession of bald eagle and golden eagle feathers substantially burdened the exercise of the Native American plaintiff's religious beliefs under RFRA); *Tagore v. United States*, 735 F.3d 324, 330 (5th Cir. 2013) (finding that an IRS employee who was prohibited from wearing a 3-inch kirpan blade in a federal building had the religious exercise of her Sikh faith substantially burdened under RFRA); *Chance v. Tex. Dep't of Criminal Justice*, 730 F.3d 404, 417 (5th Cir. 2013) (finding that preventing a Native American inmate from possessing a lock of hair from his deceased parents substantially burdened his exercise of religion under RLUIPA); *Garner v. Kennedy*, 713 F.3d 237, 244 (5th Cir. 2013) (assuming that Texas prison system's no-beard policy substantially burdened exercise of a prisoner's Muslim faith); *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 265-66 (5th Cir. 2010) (finding that a school district's requirement that a Native American student wear his long hair in a bun or tucked inside his shirt if braided was a substantial burden on the free exercise of his sincere religious belief in wearing his hair visibly long under the Texas Religious Freedom Restoration Act); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 332-34 (5th Cir. 2009) (finding that, under RLUIPA, the Texas Department of Criminal Justice's ban on worship in a certain chapel substantially burdened a prisoner's religious exercise because alternative chapels did not contain Christian symbols or furnishings, such as an altar and cross); *Merced v. Kasson*, 577 F.3d 578, 591 (5th Cir. 2009) (finding that an ordinance prohibiting the keeping of animals for slaughter and the slaughtering of four-legged animals substantially burdened the religious exercise of adherents of the Santeria religion under the Texas Religious Freedom Restoration Act); *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 615 (5th Cir. 2009) (finding that the religious exercise of an adherent of the Odinist religion was substantially burdened by the

none of the cases did this court find that the secular regulation did not impose a "substantial" burden on the believers' free exercise of religion.  Yet when these institutions' beliefs are predicated on a long history of Christian moral theology concerning complicity in immoral conduct, *Hobby Lobby*, 134 S.Ct. at 2778 & n.34, the panel here declared their concerns too "attenuated" to merit legal protection.

As a consequence of the panel's dismissal of the institutions' RFRA claim, three interrelated issues should have been addressed by this court en banc:

1.  whether under RFRA, the courts decide the "substantiality" of a burden imposed by government regulations on sincerely held religious beliefs, or whether the believers' views are controlling;

2.  whether the substantiality of a burden is measured by the degree of modification of the religious objector's behavior or by the severity of the penalty for noncompliance with the objectionable action;

3.  whether under the "accommodation," the acts causing the provision of insurance coverage for services the institutions believe are immoral are truly "independent" of the institutions.

Had these issues been resolved favorably to the institutions, we would also have to rule on the compelling interest/least restrictive means aspects of the RFRA claim.   Because the three threshold issues have sparked lengthy debate and dissent in nearly every other circuit, we will not revisit the arguments here.

Nevertheless, it seems decisive that the Supreme Court rejected the government's contention in *Hobby Lobby* that the link between mandated

---

Texas Department of Criminal Justice's policy preventing the unsupervised possession of runestones under RLUIPA); *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (finding that the religious exercise of a Jewish prisoner was substantially burdened by the Texas Department of Criminal Justice's failure to provide kosher food under RLUIPA).

emergency contraceptive coverage and the destruction of human embryos was "too attenuated." *Id.* at 2777. The Court explained:

> This argument dodges the question that RFRA presents (whether the HHS mandate imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with their religious beliefs) and instead addresses a very different question that the federal courts have no business addressing (whether the religious belief asserted in a RFRA case is reasonable). . . . [The plaintiffs'] belief implicates a difficult and important question of religion and moral philosophy, namely, the circumstances under which it is wrong for a person to perform an act that is innocent in itself but that has the effect of enabling or facilitating the commission of an immoral act by another. Arrogating the authority to provide a binding national answer to this religious and philosophical question, HHS . . . in effect tell[s] the plaintiffs their beliefs are flawed. For good reason, we have repeatedly refused to take such a step.

*Id.* at 2778. At the least, *Hobby Lobby* says the decision on whether a person's government-compelled act is "attenuated" from the immorality that follows poses a religious and ethical question that courts may not second-guess. *Hobby Lobby* also says, contrary to implications in the panel's decision here, that the Court is not ruling on the constitutionality of the accommodation regulation itself. *Id.* at 2763 n.9, 2782.

Second, the district court granted an injunction against HHS's enforcement of the "accommodation" regulation for some of these plaintiffs. *E. Tex. Baptist Univ. v. Sebelius*, 988 F.Supp.2d 743 (S.D. Tex. 2013). The court found a clear connection between the acts that the plaintiffs here are required to perform and the consequences, *i.e.* the provision of emergency contraceptive services to the institutions' employees: "It is the insurance plan that the religious-organization employer put into place, the issuer or TPA the employer contracted with, and the self-certification form the employer completes and provides the issuer or TPA, that enable the employees to obtain

the free access to the contraceptive devices that the plaintiffs find religiously offensive." *Id.* at 768-69.   The court went on to find that the government demonstrated no compelling interest in requiring the institutions to comply with the "accommodation" regulation, nor did HHS employ the least restrictive means to achieve its goal.   Curiously, the panel opinion never joins issue with the trial court's reasoning.

Third, recent opinions of the Eighth Circuit and a dissent in the Seventh Circuit explain in a detailed review of the regulations how the filing of the forms required of these institutions is the sine qua non, the but-for cause, the indisputable link to the provision of contraceptive coverage to their employees. *Sharpe Holdings, Inc. v. U.S. Dep't. of Health & Human Servs.*, ___ F.3d ___, 2015 WL 5449491 (8th Cir. Sept. 17, 2015);   *Grace Sch. v. Burwell*, ___ F.3d ___, 2015 WL 516784, at * 17 (7th Cir. Sept. 4, 2015) (Manion, J., dissenting).

Finally, this case is not controlled by *Bowen v. Roy*, 476 U.S. 693 (1986), and the related cases cited by the panel; in contradistinction to those cases, these plaintiffs are required to perform acts that put into motion the steps necessary to enable their employees to obtain contraceptive coverage they would not otherwise have received.   The plaintiffs in the "government acts" cases cited by the panel performed no such acts that, to them, were morally abhorrent.

Conscience is the essence of a moral person's identity.   Thomas More went to the scaffold rather than sign a little paper for the King.   Liberty of conscience was the foundation for Madison's and Jefferson's and other Framers' views underlying the First Amendment's religion clauses.   We end with two questions about the instant case.    If the government's "accommodation" forms are really "independent" of the provision of free contraceptive insurance to religious institutions' employees, why does the

government insist on requiring them?    And if the forms are not "independent" but indeed inseparable from the "attenuated" consequences, how can HHS or the federal courts thrust them on religious believers under the false nomer of "accommodation"?

We dissent.