EDWARD C. PRADO, Circuit Judge:
Plaintiff-Appellant Lois M. Davis (“Davis”) filed suit against her former employer, Defendant-Appellee Fort Bend County (“Fort Bend”), alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 (“Title VII”). The district court granted Fort Bend’s motion for summary judgment on both claims. For the reasons stated below, we affirm in part and reverse in part.
L FACTUAL AND PROCEDURAL BACKGROUND
Fort Bend hired Davis in December 2007 as a Desktop Support Supervisor responsible for supervising about fifteen information technology (“IT”) technicians. Charles Cook (“Cook”) was the IT Director at the time. In November 2009, he hired his personal friend and fellow church member, Kenneth Ford (“Ford”), as Davis’s supervisor.
On or about April 1, 2010, Davis filed a complaint with Fort Bend’s Human Resources Department, alleging that Cook subjected her to constant sexual harassment and assaults soon after her employment began. Fort Bend placed Davis on Family Medical Leave Act (“FMLA”) leave during its investigation of her complaint. The investigation substantiated Davis’s allegations against Cook and ultimately led to Cook’s resignation on April 22, 2010.
According to Davis, Ford immediately began retaliating against her when she returned to work from FMLA leave. She alleged that Ford “effectively” demoted her by reducing the number of her direct reports from fifteen to four; removed her from projects she had previously managed; superseded her authority by giving orders and assigning different projects and tasks directly to Davis’s staff; removed her administrative rights from the computer server; and assigned her tasks that similarly situated employees were not required to perform.
In March 2011, Fort Bend prepared to install personal computers, network components, and audiovisual equipment into its newly built Fort Bend County Justice Center. All technical support employees, including Davis, were involved in the process. As the Desktop Support Supervisor, Davis and her team were to “assist with the testing of the computers [and] make sure all of the computers had been set up properly.” The installation was scheduled for the weekend of July 4, 2011, and all employees were required to be present.
On June 28, 2011, Davis informed Ford that she would not be available to work the morning of Sunday July 3, 2011, allegedly “due to a previous religious commitment.” Davis testified that “[i]t was a special church service, and that I needed to be off that Sunday!,] ... but I would be more than willing to come in after church services.” Davis also testified that she had arranged for a replacement during her *484 absence, as she had done in the past. Ford did not approve her absence, stating that it “would be grounds for a write-up or termination.” After Davis attended her church event and did not report to work, Fort Bend terminated Davis’s employment.
Davis filed suit against Fort Bend, alleging retaliation and religious discrimination under Title VII, and intentional infliction of emotional distress. The district court granted Fort Bend’s motion for summary judgment on all claims and dismissed Davis’s action. Davis timely appealed the district court’s grant of summary judgment. On appeal, Davis challenges the grant of summary judgment on her Title VII claims, but not on her intentional infliction of emotional distress claim.
II. JURISDICTION AND STANDARD OF REVIEW
The district court had jurisdiction over Davis’s Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3). Because this is an appeal of a final judgment of a district court, this court has jurisdiction under 28 U.S.C. § 1291.
This court reviews the district court’s ruling on summary judgment de novo, applying the same standard as the district court in the first instance. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir.2007) (citation omitted). “Summary judgment should be granted when the moving party shows that ‘there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.’ ” Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir.2014) (quoting Fed.R.Civ.P. 56(a)). A genuine dispute of material fact exists when the “ ‘evidence is such that a reasonable jury could return a verdict for the nonmoving party.’ ” Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir.2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
“[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.” Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to “the nonmoving party to go beyond the pleadings and by her own affidavits, or by the ‘depositions, answers to interrogatories, and admissions on file,’ designate ‘specific facts showing that there is a genuine issue for trial.’” Id. at 324, 106 S.Ct. 2548. The court must “draw all reasonable inferences in favor of the nonmoving party” and “refrain from making credibility determinations or weighing the evidence.” Turner, 476 F.Sd at 343 (citation and internal quotation marks omitted). A party cannot “defeat summary judgment with concluso-ry allegations, unsubstantiated assertions, or ‘only a scintilla of evidence.’ ” Id. (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam)).
III. DISCUSSION
Davis argues that the district court erred when it granted summary judgment for Fort Bend as to her Title VII religious discrimination claim and as to her retaliation claim. We address each argument in turn below.
A. Davis’s Title VII Religious Discrimination Claim
As explained below, the district court erred when it granted summary judgment in favor of Fort Bend on Davis’s Title VII religious discrimination claim. *485 Title VII prohibits an employer from discriminating against an employee on the basis of her religion. 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). “An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship.” Weber v. Roadway Express, Inc., 199 F.3d 270, 273 (5th Cir.2000).
This court analyzes a Title VTI claim for a failure to accommodate religious observances under a burden-shifting framework akin to the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework. The employee must first establish a prima facie case of religious discrimination. Antoine v. First Student, Inc., 713 F.3d 824, 831 (5th Cir.2013). If she does, “the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee’s needs without undue hardship.” Id. Here, a genuine dispute of material fact exists at both steps.
1. Davis’s Prima Facie Case Survives Summary Judgment
Davis has presented evidence demonstrating a genuine dispute of material fact on her prima facie case and, thus, survives the first step. As we have previously stated:
To establish a prima facie case of religious discrimination under Title VII, the plaintiff must present evidence that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief,- and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement.
Tagore v. United States, 735 F.3d 324, 329 (5th Cir.2013) (citing Bruff v. N. Miss. Health Servs., Inc., 244 F.3d 495, 499 n. 9 (5th Cir.2001)).
The parties dispute only the first element: whether Davis’s observance of her church’s July 3rd event was pursuant to her bona fide religious belief. Bona fide religious beliefs include “moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.” See, e.g., 29 C.F.R. § 1605.1 (citing United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)). A court’s inquiry is limited to focusing upon the individual’s motivation. Specifically, a court’s task is to decide “whether [the individual’s beliefs] are, in his own scheme of things, religious.” Seeger, 380 U.S. at 185, 85 S.Ct. 850 (emphasis added). In this regard, a belief is “religious” if it is “[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by ... God.” Seeger, 380 U.S. at 176, 85 S.Ct. 850. Conversely, whether the belief itself is central to the religion, i.e., whether the belief is a true religious tenet, is “not open to question.” Moussazadeh v. Tex. Dep’t of Criminal Justice, 703 F.3d 781, 790 (5th Cir.2012) (quoting Seeger, 380 U.S. at 185, 85 S.Ct. 850) (internal quotation marks omitted) (discussing the threshold inquiry into a person’s religious belief under the Religious Land Use and Institutionalized Persons Act); see Tagore, 735 F.3d at 328-29 (applying Moussazadeh to a Title VII religious discrimination claim).
The sincerity of a person’s religious belief is a question of fact unique to each case. Tagore, 735 F.3d at 328; Moussazadeh, 703 F.3d at 791 (“This is doubly true regarding sincerity.”). “The specific religious practice must be examined rather than the general scope of applicable religious tenets, and the plaintiffs ‘sincerity’ *486 in espousing that practice is largely a matter of individual credibility.” Tagore, 735 F.Bd at 328; see also Moussazadeh, 703 F.3d at 791 (“[T]he important inquiry was what the prisoner claimed was important to him.” (alteration in original) (citation and internal quotation marks omitted)).
This court has cautioned that judicial inquiry into the sincerity of a person’s religious belief “must be handled with a light touch, or judicial shyness.” Tagore, 735 F.3d at 328 (citation and internal quotation marks omitted). “[E]xamin[ing] religious convictions any more deeply would stray into the realm of religious inquiry, an area into which we are forbidden to tread.” Id. (alteration in original) (citation and internal quotation marks omitted). Indeed, “the sincerity of a plaintiffs engagement in a particular religious practice is rarely challenged,” and “claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiffs credible assertions.” Id.
We emphasize that this limited inquiry is being decided on summary judgment in this case. Thus, the issue here is whether there exists a genuine dispute of material fact whether Davis sincerely felt that she was religiously compelled to attend and participate in a special service at church on Sunday, July 3.
In Davis’s view, her bona fide belief that she was religiously compelled to attend the event is supported by her testimony that she is a devout member of the Church Without Walls. Specifically, she refers this court to her testimony that she attends at least two services every weekend; she volunteers for the church; the pastor knows her and would vouch for her; and she believed strongly that she “needed” to be at church on Sunday, July 3, 2011, as a religious matter. As the nonmoving party on summary judgment, Davis contends that the court must draw the inference in her favor that her decision to attend church was religious, “at the very least in her own scheme of things.”
Fort Bend asserts without analysis or argument that Davis’s reason for not working on July 3 — breaking ground for a new church and feeding the community— “is not a religious belief or practice.” Fort Bend also includes the majority of the district court’s reasoning verbatim. The district court noted that “being an avid and active member of church does not elevate every activity associated with that church into a legally protectable religious practice.” The district court then found that Davis’s “absence from work was due to personal commitment, not religious conviction,” because she described her obligation as a “request[ ]” from her Pastor that all members participate in the “community service event.”
We disagree with Fort Bend and the district court. Neither addresses whether Davis’s religious belief was sincere and, instead, both improperly focus upon the nature of the activity itself. A showing of sincerity, however, does not require proof that the July 3rd church event was in itself a true religious tenet, but only that Davis sincerely believed it to be religious in her own scheme of things. See Moussazadeh, 703 F.3d at 791 (“Individuals may practice their religion in any way they see fit, and it is not for the Court to say it is an unreasonable one. A showing of sincerity does not necessarily require strict doctrinal adherence to standards created by organized religious hierarchies.” (citation and internal quotation marks omitted)). Thus, even if attendance at the “community service event” was arguably not a religious tenet but a mere request by her Pastor, “[t]hese telling arguments address an issue that is not for federal courts, powerless as we are to evaluate the logic or validity of beliefs found religious and sincerely held.” *487 See Cooper v. Gen. Dynamics, Convair Aerospace Div., Fort Worth Operation, 533 F.2d 163, 166 n. 4 (5th Cir.1976) (chastising a district court for having “evaluated the tenet and concluded that it was irrational and specious”).
Focusing on the sincerity of Davis’s belief, as we must, we hold that her prima facie case survives summary judgment. Davis testified about her devotion to church and that she was “[a]bsolutely not” “just a weekend warrior.” Instead, she was actively committed to her church “because [she] believe[d] in something,” sometimes attending up to three services every Sunday. Regarding the particular Sunday at issue here, July 3, 2011, she testified that she “needed” to attend “a special church service.” She similarly alleged in her complaint that “she would be unavailable for work on Sunday July 3, 2011 due to previous religious commitment.” Although her complaint also noted that her “Pastor requested that all members participate in this highly anticipated community service event ” (emphasis added), we must “refrain from making credibility determinations or weighing the evidence.” Turner, 476 F.3d at 343; see, e.g., Seeger, 380 U.S. at 184, 85 S.Ct. 850 (“Religious experiences which are as real as life to some may be incomprehensible to others.” (quoting United States v. Ballard, 322 U.S. 78, 86, 64 S.Ct. 882, 88 L.Ed. 1148 (1944))); Tagore, 735 F.3d at 328 (holding that plaintiffs sincerity “is largely a matter of individual credibility”). Such restraint is particularly important here, where a court “must refuse to dissect religious tenets just because the believer[’s] ... beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.” A.A. v. Needville Indep. Sch. Dist., 611 F.3d 248, 261 (5th Cir.2010).
Accordingly, drawing all reasonable inferences in favor of Davis as the nonmov-ing party, and considering the “light touch” and “judicial shyness” that must be exercised, Davis’s testimony about her own sincere belief regarding her religious need to attend a special service at church on Sunday sufficiently evidenced a genuine dispute of material fact whether she held a bona fide religious belief. See Tagore, 735 F.3d at 328 (“[Cjlaims of sincere religious belief in a particular practice have been accepted on little more than the plaintiffs credible assertions.”).
2. The Burden Shifts to Fort Bend
At the next step, Fort Bend may assert its affirmative defenses and “demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee’s needs without undue hardship.” Antoine, 713 F.3d at 831. On summary judgment, Fort Bend asserted only undue hardship, which “exists when an employer is required to bear more than a de minimis cost.” Id. at 839 (citation omitted).
Davis argues that, on the merits,[1] Fort Bend did not present evidence that it could not reasonably accommodate her religious observance without an undue hardship. According to Davis, she asked only to be absent the morning of July 3 and promised to report to work directly after the July 3rd event. Not only was this *488 “short period of absence” minimal under Title VII, but Davis claims she arranged for a substitute for the hours she would be absent. Moreover, Davis contends we should not give credit to Fort Bend’s purported undue hardship because Fort Bend permitted another employee to take time off to attend a parade that same weekend.
In response, Fort Bend cites a string of circuit precedent — see, e.g., Bruff, 244 F.3d at 501; Weber, 199 F.3d at 274; Eversley v. MBank Dall., 843 F.2d 172, 176 (5th Cir.1988); Brener v. Diagnostic Ctr. Hosp., 671 F.2d 141 (5th Cir.1982) — for the proposition that requiring one employee to substitute for another presents an undue hardship. Additionally, Fort Bend asserts that Davis’s role as Desktop Support Supervisor was vital to the efficiency of the move. Thus, her absence not only increased the risk that the computers would not be timely installed and functional, but also required other employees to take on additional duties or change their schedules. Finally, Fort Bend disregards the substitute Davis arranged because Davis did not have the authority to make such schedule changes.
The district court found that Davis did not offer any evidence to rebut Fort Bend’s undue hardship defense. Davis did provide a fellow supervisor’s affidavit, in which the supervisor averred that Ford denied his request to permit his employees to attend church services on July 3rd. But, the district court found that the affidavit instead bolstered Fort Bend’s position, reasoning that “all such requests were denied because granting any particular one would have adversely affected other employees.” “[R]ather than evidence of religious discrimination,” the district court continued, “there is evidence only of a neutral policy denying all requests for time off.”
We disagree with Fort Bend and the district court on this issue as well. First, the district court improperly inferred facts against the nonmoving party, Davis, when it concluded that Ford denied the requests “because granting any particular one would have adversely affected other employees.” However, because there was nothing in the affidavit hinting at Ford’s reason for denying the request, the district court’s conclusion was improper. See Turner, 476 F.3d at 343 (explaining that a court must draw all reasonable inferences in favor of the nonmoving party on summary judgment). Next, the district court compared Davis to similarly situated employees within the same protected class— i.e., those with religious observances. But, the proper comparators are “similarly situated employees outside the protected group.” See, e.g., McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir.2007) (per curiam) (emphasis added). In that regard, Davis testified that Ford permitted another employee time off to attend a Fourth of July parade the weekend of the move.
We also reject Fort Bend’s arguments because, even though Fort Bend correctly recites precedent, it misapplies law to facts. Fort Bend correctly asserts that requiring an employee to substitute for Davis’s absence may, as a matter of law, impose more than a de minimis cost. See, e.g., Bruff, 244 F.3d at 501 (“Requiring one or both counselors to assume a disproportionate workload, or to travel involuntarily with Bruff to sessions to be available in case a problematic subject area came up, is an undue hardship as a matter of law.”). Fort Bend is also correct that permitting Davis to be absent may leave it shorthanded and, therefore, impose an undue hardship as a matter of law. See, e.g., Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (holding that to leave the em *489 ployer short-handed would involve costs to the employer “in the form of lost efficiency”). But these cases do not apply to the facts here because there was a ready and willing volunteer to substitute for Davis.
Substituting a volunteer does not necessarily impose the same hardship on the employer, if any, as requiring an employee to substitute for another’s religious observance. In holding that Title VII does not require an employer to substitute employees, the Supreme Court in Hardison stated “[t]here were no volunteers to relieve Hardison on Saturdays, and to give Hardi-son Saturdays off, TWA would have had to deprive another employee of his shift preference at least in part because he did not adhere to a religion that observed the Saturday Sabbath.” 432 U.S. at 81, 97 S.Ct. 2264 (emphasis added). In Eversley, we relied on this language from Hardison to hold that “it is unreasonable and an undue hardship on an employer to require the employer to force employees, over their express refusal, to permanently switch from a daytime to a nighttime shift in order to accommodate another employee’s different Sabbath observation.” 848 F.2d at 176 (emphasis added). Further, in disagreeing with any implication that an “employer may be required to force other employees into a disadvantageous permanent switch of shifts against their wishes,” we noted that “the Sixth Circuit seems to have assumed that an employer’s attempt to seek out employees who would be willing to switch shifts would be a reasonable accommodation for purposes of Title VII.” Id. (citing Smith v. Pyro Mining Co., 827 F.2d 1081, 1088-89 (6th Cir.1987)).
Here, Davis arranged for a substitute who voluntarily agreed to work Davis’s shift that Sunday. That Davis lacked authority to schedule her own substitute does not take away from the fact that there was at least one volunteer to work Davis’s shift. With a volunteer substitute available, Fort Bend would not have had incur any cost requiring an employee to substitute for Davis, nor would Fort Bend necessarily be left short-handed. See Antoine, 713 F.3d at 839-40 (holding that the availability of a voluntary shift swap procedure precluded employer’s argument that accommodating plaintiff would have imposed the undue hardship of a “forced, unilateral reassignment by [the employer]”). Because Fort Bend does not argue that permitting Davis’s arranged substitute to work in place of Davis would impose an undue hardship, there exists a genuine dispute of material fact whether Fort Bend would have suffered undue hardship in accommodating Davis’s religious observance. The district court’s grant of summary judgment based upon Fort Bend’s undue hardship was error.
B. Davis’s Title VII Retaliation Claim
Separate from a religious discrimination claim, Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice that violates Title VII. 42 U.S.C. § 2000e-3(a).
Because Davis does not present any direct evidence of retaliation, her retaliation claim is evaluated under the McDonnell Douglas burden-shifting framework. See Septimus v. Univ. of Hous., 399 F.3d 601, 607-08 (5th Cir.2005) (applying the McDonnell Douglas framework in a Title VII retaliation case). The McDonnell Douglas framework requires a plaintiff first to demonstrate a prima facie case of retaliation. LeMaire v. La. Dep’t of Transp. & Dev., 480 F.3d 383, 388 (5th Cir.2007). To set out a prima facie case of Title VII retaliation, a plaintiff must show “(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity *490 and the adverse action.” Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 551 (5th Cir.2009) (citations and internal quotation marks omitted). “If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer’s reason is actually a pretext for retaliation.” LeMaire, 480 F.3d at 388-89 (citation omitted).
Here, Davis meets neither her summary judgment burden at the prima facie stage with respect to Fort Bend’s alleged pre-termination actions, nor her burden at the pretext stage with respect to her termination.
As to Davis’s prima facie case, the primary dispute is whether adverse employment action occurred. To establish that she suffered adverse employment action, Davis must show that “a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citation and internal quotation marks omitted). This materiality requirement separates “significant from trivial harms.” Id.
In White, the Supreme Court explained that “[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.” Id. at 67, 126 S.Ct. 2405. Thus, “petty slights, minor annoyances, and simple lack of good manners” are not actionable retaliatory conduct; Title VII “does not set forth a general civility code for the American workplace.” Id. at 68, 126 S.Ct. 2405 (citations and internal quotation marks omitted). Importantly, “the significance any given act of retaliation will often depend upon the particular circumstances. Context matters.” Id. at 69, 126 S.Ct. 2405. For example,
A schedule change in an employee’s work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor’s refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee’s professional advancement might well deter a reasonable employee from complaining about discrimination.
Id. (citations omitted).
Davis points to several actions as adverse: (1) subjecting her to daily thirty-minute meetings with upper management that were not required of similarly situated employees; (2) superseding her authority by giving orders and assigning different projects and tasks directly to Davis’s staff; (3) removing her administrative rights from the computer server; (4) reducing her staff from fifteen to four employees; and (5) terminating her employment. Davis contends that these acts, both individually and in the aggregate, constitute adverse employment action.
Simply listing the employment actions that Davis believes were adverse does not meet her burden on summary judgment because she makes no effort to evidence the circumstances that make those actions “materially adverse.” See White, 548 U.S. at 68, 126 S.Ct. 2405. Again, “[c]ontext matters.” Id. at 69, 126 S.Ct. 2405. For example, whether removing her administrative rights from the computer server was an actionable “significant” harm or a non-actionable “trivial” *491 harm may depend upon, at the least, Davis’s need for administrative rights. Administrative rights may have been required for Davis to perform her duties, or those rights may have been a convenience. Davis fails to offer any evidence on the matter and, thus, fails to evidence a genuine dispute of material fact.
Ford’s thirty-minute meetings, direct assignment of work to Davis’s staff and reduction of her staff similarly lack context. See White, 548 U.S. at 71, 126 S.Ct. 2405 (“Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case.... ”). Although Davis alleged in her complaint that Ford’s “malice and retaliation tactics against [her] caused discord and conflict amongst the IT employees including [her] personal staff,” this assertion does not implicate any impact on Davis herself. She does not offer any evidence to show, for example, that these actions were “the result of any fault on [her] part, such as might carry a stigma in the workplace,” Stewart v. Miss. Transp. Comm’n, 586 F.3d 321, 332 (5th Cir.2009); that “she suffered a diminution in prestige or change in standing among her co-workers” because of these actions, id.; that she viewed these actions as a demotion[2] or that such actions embarrassed her, Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 485 (5th Cir.2008); or that these actions made her duties “more arduous,” White, 548 U.S. at 71, 126 S.Ct. 2405 (internal quotation marks omitted). Without any evidence of the context of these pre-termi-nation actions, there is no genuine dispute whether Davis suffered an “adverse impact” as a result of Ford’s pre-termination actions. See Stewart, 586 F.3d at 332.
Turning to her termination, there is no dispute that it was an adverse action. However, Davis does not present any evidence that Fort Bend’s legitimate, non-retaliatory reason for terminating her— that she failed to report to work — was pretext for retaliation. Instead, she argues only that Fort Bend’s reason for terminating her was pretext for its religious discrimination. This is irrelevant to her retaliation claim. LeMaire, 480 F.3d at 388-89 (“After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer’s reason is actually a pretext for retaliation.” (emphasis added) (citation omitted)). Fort Bend has therefore stated a legitimate, non-retaliatory reason that Davis has not rebutted.
In sum, Fort Bend asserted the absence of evidence demonstrating an adverse employment action, and of evidence demonstrating pretext. Davis thus had to bear the burden of producing evidence demonstrating the existence of a genuine dispute of material fact as to these issues, but failed to meet that burden. See Celotex Corp., 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment was proper as to Davis’s Title VII retaliation claim.
IV. CONCLUSION
The district court’s summary judgment on Davis’s Title VII religious discrimination claim is REVERSED, and its summary judgment on Davis’s Title VII retaliation claim is AFFIRMED. The matter is REMANDED for further proceedings in accordance with this opinion.

. Davis also argues that Fort Bend waived the affirmative defense of undue hardship. A district court’s ruling on waiver is typically reviewed for abuse of discretion, Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co., 706 F.3d 622, 633 (5th Cir.2013), but the district court has not addressed the issue. Given the "fact-specific” inquiry required, Woodfieldv. Bowman, 193 F.3d 354, 362 (5th Cir.1999), the district court will be in a better position to decide whether Fort Bend has waived the defense. Accordingly, and because we resolve this issue in Davis’s favor regardless, we decline to address waiver.

. Davis argued in briefing that she was "effectively demoted” when Ford reduced the number of her direct reports, but points us to no evidence in the record that she felt this was a demotion.