# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 31, 2024

Lyle W. Cayce
Clerk

No. 23-10498
Summary Calendar

————————

Christina Traudt,

*Plaintiff—Appellant*,

*versus*

Data Recognition Corporation,

*Defendant—Appellee*.

————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-2703

————————————————————

Before Higginbotham, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:[*]

Plaintiff Christina Traudt claims that Data Recognition Corporation's termination of her employment was the result of discrimination on the basis of sex. The district court granted the company's motion for summary judgment. We AFFIRM.

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.4.

No. 23-10498

## FACTUAL AND PROCEDURAL BACKGROUND

Data Recognition Corporation ("DRC") provides various education, assessment, and document services to public entities, primarily K-12 schools. DRC hired Traudt, a white woman, as an Assessment Solution Representative in January 2018. Traudt was responsible for selling DRC's products to school districts and various adult education organizations such as community colleges, prisons, and adult education buildings. Her sales territory included Colorado, Louisiana, Mississippi, Oklahoma, and North Texas. Traudt had both a salary and an Incentive Plan for compensation. The Incentive Plan contemplated the payment of monetary awards to employees based on "achievement in sales." Incentive Plan, however, provided that it could be "changed or terminated without notice at the sole discretion of [DRC]," and that it granted no contractual rights.

In 2019, DRC entered into an exclusive contract with the Texas Education Agency ("TEA"). This contract made DRC the exclusive statewide provider of an English language proficiency test to identify students who would qualify for English as a Second Language assistance. Traudt claims that she played a key role in securing this contract. Traudt contends that through this exclusive contract and her own significant work efforts, she was personally responsible for $3,625,886 in sales for Fiscal Year 2019. These sales, she claims, should have entitled her to $165,508 in commission under the Incentive Plan.

Instead, Traudt only received $14,628 for the third quarter of the fiscal year, bringing her cumulative commission payments to $18,814 through the first three quarters of Fiscal Year 2019.[1] Traudt claims that on multiple

---

[1] There was evidence that Traudt was paid an additional $15,000 for her efforts in securing the exclusive TEA contract.

2

occasions she raised concerns over the smaller-than-expected commissions for her and fellow Assessment Solution Representative Gina Davis. She brought these concerns to Bill Bernys, the Vice President of Sales. Bernys allegedly responded that if Traudt and Davis were paid according to the Incentive Plans, they would earn more than him and David Seitter, the Senior Vice President of Sales, Marketing & Product Development — which Seitter might disallow. Traudt further alleges that Bernys told her to "leave it alone for now or you won't have a job."

With the onset of the COVID-19 pandemic, Traudt received a letter in May of 2020 explaining that commissions for the first and second quarters of Fiscal Year 2020 would be deferred. Then, in July 2020, DRC terminated her employment, ostensibly as part of a workforce reduction resulting from lost contracts and revenue during the pandemic. DRC terminated Gina Davis's employment as well. Traudt filed suit in November 2020.

At the district court, Traudt asserted two claims: (1) violation of the Equal Pay Act, and (2) sex discrimination, in violation of "Title VII and/or the Texas Human Rights Act, Texas Labor Code § 21.001." Traudt's claims centered around her smaller-than-expected commissions and the termination of her employment by DRC. DRC moved for summary judgment, which the district court granted. Traudt timely appealed.

## DISCUSSION

We review a district court's summary judgment *de novo*, using the same standard as the district court. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Davis*, 765 F.3d at 484 (quotation marks and citation omitted).

## I.    *Traudt's compensation*

Traudt claims that DRC discriminated on the basis of sex by failing to pay higher commissions for her sales.

To establish a *prima facie* case of wage discrimination under the Equal Pay Act, a plaintiff "must show that (1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Badgerow v. REJ Props.*, 974 F.3d 610, 617 (5th Cir. 2020) (quotation marks and citation omitted).  Similarly, "[a] plaintiff establishes a *prima facie* case of wage discrimination under Title VII when she shows that she is a member of a protected class who was paid less than a non-member for work requiring substantially the same responsibility."  *Id.* (quotation marks and citation omitted).  A Title VII claim of wage discrimination will usually parallel a claim for violation of the Equal Pay Act.  *Siler-Khodr v. Univ. of Tex. Health Sci. Ct. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001).

Traudt argues that she was discriminated against on the basis of her sex because, while she sold significantly more product than male Assessment Solution Representatives, she only "received substantially the same commission total amount as her male comparators."

DRC asserts that Traudt failed to establish both the second element (that she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions) and the third element (that she was paid less than the employee of the opposite sex providing the basis of

comparison). We need to consider only the second element,[2] which requires that the male employees with whom she compares herself are proper comparators.

DRC claims that Traudt's compensation was smaller than anticipated in part because of the circumstances in which she made her sales. Traudt sold the language-testing product under an exclusive, statewide distribution contract with the TEA. Although Traudt asserts that she performed extensive work during the period before the contract was obtained, DRC introduced evidence that Nina Trigger led the team responsible for securing the exclusive contract, including creating some of the materials presented to the TEA and helping present DRC's proposal to the TEA. DRC concludes from Nina Trigger's involvement in securing the distribution contract that she, not Traudt, was entitled to commissions from the sales made under the exclusive contract. DRC stated: "[c]ommissions were not 'diverted' to Trigger. She earned them."[3]

Traudt responds that male employees Jon Weiss and Robert LaGrassa were paid in accord with their expectations under the Incentive Plan. The discrepancy between their payments under the Incentive Plan and hers, she alleges, is due to sex discrimination. She further claims they are appropriate comparators "because they held the same job title, were in the same department, reported to the same manager, joined in the same commission plan, sold the same product, and had exceeded their quotas in the past so as

---

[2] We do not reach the district court's alternative holding that Traudt's Title VII claim for pay discrimination was untimely, even if she could plead a *prima facie* case.

[3] We restate here that the Incentive Plan provided both that it granted no contractual rights and that it was subject to change at DRC's discretion. Even if Traudt is correct that she (and not Nina Trigger) had the better entitlement to commissions for the Texas sales of the language testing product, the Incentive Plan by itself did not bind DRC to pay her those commissions.

to be in the accelerator areas of the commission plan." She concludes from these similarities that "they are 'close enough,'" such that "[i]t is for a jury to determine whether Weiss and LaGrassa . . . are distinguishable as comparators." We disagree.

For Weiss and LaGrassa to be appropriate comparators, Traudt needed to show she "performed work in a position requiring equal skill, effort, and responsibility under similar working conditions" as those two. *Badgerow*, 974 F.3d at 617. Although Weiss and LaGrassa shared with Traudt the title of Assessment Solution Representative, that does not establish that they performed similar work under similar conditions. Instead, we consider it dispositive that Traudt identifies no evidence that Weiss and LaGrassa also made their sales under DRC's exclusive contract with Texas. Titles are not critical for comparison purposes. It is the nature of the work and the context in which it is performed that control. *See id.* Without downplaying Traudt's efforts on behalf of DRC, the ability to make sales under an exclusive contract that effectively eliminated competitors' alternatives is a decisive difference between her working conditions and those of Weiss and LaGrassa.

Because Traudt cannot show that she performed work requiring equal skill and under similar working conditions as her purported comparators, her *prima facie* case of wage discrimination fails. *See Badgerow*, 974 F.3d at 617. DRC is entitled to summary judgment on the issue of Traudt's compensation.

## II.    *Traudt's termination*

Traudt claims that DRC committed sex discrimination by terminating her and Gina Davis's employment instead of terminating male employees.

To establish a *prima facie* case of discrimination, a plaintiff must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment

action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Roberson-King v. La. Workforce Comm'n, Office of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018) (citation omitted). Once the plaintiff makes this *prima facie* case, the burden shifts to the employer to give a legitimate, nondiscriminatory reason for its adverse employment action against the plaintiff. *Id.* The employer's burden "is only one of production, not persuasion, involving no credibility assessments." *Russel v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The burden then shifts back to the plaintiff to show that the purportedly nondiscriminatory reason is "merely pretextual." *Roberson-King*, 904 F.3d at 381 (citation omitted). In doing so, the plaintiff must offer "substantial evidence" of pretext; "a mere shadow of a doubt is insufficient," and the employee's subjective belief alone is not enough. *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001) (quotation marks and citation omitted).

Traudt argues that DRC discriminated against her and Gina Davis because "both she and Gina Davis were let go despite having better performance numbers than comparable male employees." DRC responds that it terminated Traudt's employment as part of a reduction in workforce of more than fifty employees due to lagging sales from the COVID-19 pandemic. Traudt and Gina Davis were among those included in the workforce reduction because of (1) their relative lack of seniority with the company and (2) the ability of other, more senior employees to absorb their responsibilities. DRC emphasizes that even after the workforce reduction, over 70 percent of its sales team remained female.

Although Traudt offers several reasons why DRC's termination decision was pretextual, we agree with the district court that, assuming for the sake of argument that Traudt has established a *prima facie* case of

discrimination, she has not met her burden to show that DRC's given reasons for her termination are pretextual.

Traudt states that "men were shown preferential treatment, because one would think sales would be the principal method of evaluating sales employees, and the two female employees who were let go were the top two sales performers." This assertion by itself is not responsive to DRC's explanation that its workforce reduction was guided by seniority and coverage overlaps. Nina Trigger and Genevieve Olvera, the two remaining Texas sales team members, started with DRC in 2007 and 2006, respectively. Traudt and Gina Davis, on the other hand, were hired in 2014 and 2018, respectively. Further, DRC's Senior Vice President Seitter testified that Trigger and Olvera were able to absorb Traudt's and Davis's responsibilities because they also worked in sales, had experience with the language testing product that Traudt and Davis sold, and had business relationships in Texas.

Traudt's efforts to rebut the seniority and coverage overlap explanations are unpersuasive. Traudt asserts the coverage overlap explanation is pretextual because DRC hired a "Brand Ambassador" not long after terminating her employment. Her declaration before the district court claimed that "[t]he job description [for the new Brand Ambassador position] was virtually identical to what Gina [Davis] and I had been doing, but was not commissioned."[4] This attempted rebuttal fails for two reasons. First, the position of Brand Ambassador was filled by a woman, Felicia Taylor. Traudt is alleging that DRC discriminated against her because of her status as a female. The hiring of another female does not rebut a company's explanation that it was not motivated by sex discrimination. Second, this

_____

[4] Gina Davis's declaration contained exactly the same charge against DRC's creation of the Brand Ambassador position: "The job description was virtually identical to what Christina [Traudt] and I had been doing, but was not commissioned."

sparse allegation — that the new position was "virtually identical" to what Traudt had been doing, but without commission — is not enough to survive summary judgment. We have nothing more than this statement to compare Traudt's role as Assessment Solution Representative with the new role of Brand Ambassador. As we stated, "[a] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis*, 765 F.3d at 484. This assertion by Traudt is not "substantial evidence" of pretext that would rebut DRC's explanation. *See Auguster*, 249 F.3d at 402–03.

Traudt also asserts that DRC hired another sales representative to work in Texas. In their declarations, both Traudt and Gina Davis stated that they "also later learned from DRC employees that Chastity Wright was rehired as a sales representative to work in Texas, but only to sell the TABE product, not the" language-testing product. This sparse assertion, like the one pertaining to the Brand Ambassador position, is insufficient to show that DRC's explanation of coverage overlap in Texas was pretextual. DRC was entitled to summary judgment on the issue of Traudt's termination.

## III.    *Retaliation against Traudt*

Traudt also claims her termination amounted to wrongful retaliation in violation of Title VII. She asserts that DRC fired her as an act of retaliation after she complained about sex discrimination in the payment of commissions.

To establish a retaliation claim under Title VII, a plaintiff must show "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (quotation marks and citation omitted). An employee "has engaged in activity protected by Title

VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). Demonstrating all three elements "gives rise to an inference of retaliation," at which point the burden "shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (quotation marks and citations omitted).

Traudt argues that she engaged in protected activity because she "complained about the pay inequity" to Bill Bernys. In her declaration, she alleges that she "inquired about where the rest of my hard-earned money was"; later, she "confronted [Bernys] about it during a weekly Texas sales meeting," and "pointed out and restate[d] our Texas sales numbers, and that everyone else on the sales team had been paid according to the Plan."

The problem for Traudt is that her declaration's own recounting of the confrontations with Bernys give no indication that she suggested an inequity problem based on a worker's sex. Although her declaration supports that she complained about not being paid enough under the Incentive Plan, a complaint by a member of a protected class is not inherently an assertion that the complainant is being discriminated against *because of* their membership in the protected class. We agree with the district court: "Plaintiff's complaint about her commissions did not reference any unlawful discrimination or express the view that men were receiving their full commissions while women were not."

Traudt responds that "Bernys seemed to understand the complaint had gender discrimination overtones, because he pointed out that if they were paid according to the Plan, Davis and Traudt would be paid more than him

and David Seitter (i.e. two women would be paid more than two men), and he didn't know if David would allow that."  Her own recounting of the confrontations with Bernys, though, belies a claim that she raised the issue of a discrepancy based on an employee's sex with him.  Traudt's declaration states that she told Bernys "everyone else on the sales team had been paid according to the Plan"; the sales team included females other than Traudt and Gina Davis.  In light of Traudt's complaint that "everyone else on the sales team," which necessarily included women, had been paid, the only reasonable interpretation of Bernys's alleged response is that David Seitter might not allow two sales representatives (Traudt and Davis) to make more than the Senior Vice President of Sales, Marketing & Product Development (Seitter) and the Vice President of Sales (Bernys).  The implausible inference that Traudt would have us draw — that Bernys understood the nature of her complaint because she indeed complained to him about the sex disparity — does not amount to more than an "unsubstantiated assertion" or "scintilla of evidence." *See Davis*, 765 F.3d at 484.  We conclude that DRC is entitled to summary judgment on the issue of retaliation.

AFFIRM.