# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2025

Lyle W. Cayce
Clerk

No. 24-30667

Donald Wright,

*Plaintiff—Appellant*,

*versus*

Honeywell International, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:22-CV-928

_____

Before Elrod, *Chief Judge*, and Duncan and Engelhardt, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

Donald Wright worked for Honeywell International for fourteen years. When Honeywell implemented a mandatory COVID-19 vaccination policy in 2021, Wright applied for a religious exemption to the policy but was denied. Honeywell then fired Wright for failing to get the vaccine. Wright sued Honeywell under Title VII for religious discrimination and disparate treatment based on religion. The district court granted summary judgment for Honeywell as to all of Wright's claims and denied Wright's motion to reconsider. We REVERSE the district court's grant of summary judgment

No. 24-30667

as to Wright's Title VII religious discrimination claim and REMAND for further proceedings consistent with this opinion.[1]

I

From 2008 to 2022, Donald Wright worked as a Dock B Operator at Honeywell's Specialty Materials facility in Louisiana.  In late 2021, Honeywell implemented a mandatory COVID-19 vaccination policy, in compliance with a newly issued Executive Order covering federal contractors.  Absent an exemption, the policy required Wright to get the COVID-19 vaccine or be terminated.

Wright sought a religious exemption from the vaccination policy, citing on his exemption request form his belief that "our creator gave us this gift to choose and decide for ourselves," and also that it is "in our constitution no man should be forced to do something he . . . is not comfortable with."  Wright is a Baptist Christian.  He explained that his religion does not "prevent[]" him from receiving the vaccine, "but cert[ai]n passages le[ad him] to feel very strongly about" his decision.  Wright also attested on his exemption request form that he "didn[']t like the respon[s]e [his] body had" to a tetanus vaccine in 2015.  And he stated that this was the first time that he had sought a religious exemption from a mandatory vaccine.

Wright also submitted Honeywell's required third-party attestation of his religious beliefs, completed by his daughter.  Citing scripture, his daughter explained, "It is in our belief that humans should only use things

_____

[1] Because we are reversing the district court's grant of summary judgment as to Wright's religious discrimination claim, Wright's appeal of the district court's ruling on his motion to reconsider is moot, and we need not consider the parties' arguments regarding it.

that are created of the earth by God. We believe the vaccine is a claim of the mark of the beast[;] it is man made and goes against our religion."

In March 2022, Honeywell denied Wright a religious exemption because, in its view, Wright's "submission did not adequately identify any sincerely held religious belief or tenet that would prohibit [him] from taking the COVID-19 vaccine, beyond freedom of choice." Wright still did not get vaccinated. In April 2022, he was placed on active suspension without pay. Weeks later, Honeywell informed Wright that his employment had been terminated on account of his failure to get vaccinated.

Wright filed a charge of discrimination with the Equal Employment Opportunity Commission. He received a right-to-sue letter and filed this lawsuit, alleging Title VII claims for religious discrimination and disparate treatment based on religion.

The district court granted Honeywell's motion for summary judgment and dismissed all of Wright's claims, concluding as to his religious discrimination claim that Wright had "failed to provide sufficient admissible evidence to raise a genuine issue of material fact that he both (1) had a bona fide religious belief at the time of termination and (2) informed [Honeywell] of this religious belief." Wright then moved for reconsideration under Fed. R. Civ. P. 59(e). The district court denied the motion, and Wright timely appealed.[2]

## II

We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Hightower v. Tex. Hosp.*

---

[2] Wright appeals only the district court's ruling as to his religious discrimination claim, not its ruling as to his disparate treatment claim.

*Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995). "In doing so, we view all facts in the light most favorable to the non-movant . . . and draw all reasonable inferences in his favor." *Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021).

## III

## A

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of religion. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). Courts use a burden-shifting framework to analyze Title VII claims for religious discrimination. *Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014), *aff'd on other grounds*, 587 U.S. 541 (2019). First, the employee must establish a *prima facie* case of religious discrimination by presenting evidence that: (1) he held a bona fide religious belief; (2) his belief conflicted with a requirement of his employment; (3) his employer was informed of his belief; and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Id.* If the employee establishes a *prima facie* case, the burden shifts to the employer to "demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Id.*

## B

Wright insists that the district court erred in holding that he failed to meet his summary judgment burden as to the first and third prongs of his religious discrimination claim. We agree.

### 1

Wright has met his summary judgment burden as to the "bona fide religious belief" prong.

"Bona fide religious beliefs include 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'" *Davis*, 765 F.3d at 485 (quoting 29 C.F.R. § 1605.1; citing *United States v. Seeger*, 380 U.S. 163, 176 (1965)). A "religious" belief is a "sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by . . . God." *Id.* (quoting *Seeger*, 380 U.S. at 176).[3] "The sincerity of a person's religious belief is a question of fact unique to each case." *Id.*

We have "cautioned that judicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'" *Id.* at 486 (quoting *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013)). The "sincerity" of one's "'engagement in a particular religious

---

[3] The notion that "religious beliefs" include purely "moral or ethical beliefs" can be traced to Vietnam-era Supreme Court decisions addressing conscientious objectors. *See Seeger*, 380 U.S. at 166 (holding that the term "religious training and belief" in the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j) (1958 ed.), includes a "belief that . . . occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God"); *id.* at 166 (recounting Seeger's "religious faith in a purely ethical creed"); *Welsh v. United States*, 398 U.S. 333, 339–40 (1970) (interpreting *Seeger* to mean that a conscientious objection must "stem from the registrant's *moral, ethical, or religious* beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions" (emphasis added)). The Supreme Court has never revisited these decisions, nor has it squarely addressed the related question of what "Religion" means in the First Amendment. *But see Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972) (suggesting objections to laws that are "philosophical and personal rather than religious . . . do[] not rise to the demands of the Religion Clauses"). Perhaps one day it will. *See, e.g.*, Mark L. Movsesian, *The New Thoreaus*, 54 LOYOLA U. CHI. L. REV. 539, 548–554 (2023) (discussing tensions in Supreme Court cases on the meaning of "religion"). For our part, we think it doubtful that the term "religion"—whether in federal statutes or in the Religion Clauses—can be coherently read to include purely moral, ethical, or philosophical beliefs without emptying the term of any distinct meaning. *See, e.g.*, Lee J. Strang, *The Meaning of 'Religion' in the First Amendment*, 40 DUQUESNE L. REV. 181, 183 (2002) (arguing that an originalist definition of "Religion" would exclude "belief systems based on non-theistic views of the world—philosophy, for example").

practice is rarely challenged,' and 'claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions.'" *Id.* (quoting *Tagore*, 735 F.3d at 328). At the same time, the belief cannot not be "merely a preferred practice but rather a religious obligation" that the plaintiff sincerely believes he must uphold. *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2351 (2025).

As evidence in support of this prong, Wright points to the answers on his exemption request form and his daughter's third-party attestation, as well as to his deposition testimony and the testimony of his expert witness. This evidence is sufficient to establish a genuine dispute of material fact as to whether Wright held a bona fide religious belief. All of these sources reference religious reasons for Wright's vaccine refusal. While his exemption request form and his deposition testimony also include some political statements and personal-preference-based reasons for his vaccine refusal, the sincere religious content of these documents is self-evident.

Viewing the evidence in the light most favorable to Wright and drawing all reasonable inferences in his favor, *Gray*, 18 F.4th at 467, a reasonable jury could find that Wright held at least a mixed motive for his vaccine refusal: a bona fide religious belief alongside political beliefs and personal preference. Wright's evidence demonstrates a "moral or ethical" belief in bodily autonomy and freedom to choose what to put in his body. *Davis*, 765 F.3d at 485 (quoting 29 C.F.R. § 1605.1). The fact that he gave additional reasons for his vaccine refusal does not show that his belief is "merely a preferred practice." *Mahmoud*, 145 S. Ct. at 2351. Instead, it simply shows that his vaccine refusal is grounded on both religious and non-religious reasons. Furthermore, the inquiry on this prong is not "whether [Wright's specific] belief is a true religious tenet" of the Baptist faith, but rather whether the belief is, "*in his own scheme of things*, religious." *Davis*, 765 F.3d at 485; *Welsh v. United States*, 398 U.S. 333, 339 (1970) (to be

"religious" for Title VII purposes, beliefs "need not be confined in either source or content to traditional or parochial concepts of religion"); *cf. Chalifoux v. New Caney Indep. Sch. Dist.*, 976 F. Supp. 659, 670 (S.D. Tex. 1997) (finding in the First Amendment context that, although wearing a "rosary as a necklace is neither a requirement of orthodox Catholicism nor a common Catholic practice," this "form of religious practice is entitled to . . . protection"). Because a plaintiff's sincerity in espousing a religious practice "is largely a matter of individual credibility," *Davis*, 765 F.3d at 485–86 (quoting *Tagore*, 735 F.3d at 328), Wright's evidence would be better weighed by a jury than by the court at the summary judgment stage.

2

Wright has also met his summary judgment burden as to the third prong: whether he informed Honeywell of the bona fide religious belief at issue. *Davis*, 765 F.3d at 485.

As set out above, Wright's summary judgment evidence contains multiple references to his religious beliefs. His discussion in his exemption request form of a religious reason for his vaccine objection—specifically, his belief in God-given bodily autonomy and freedom of choice—and his daughter's third-party affidavit constitute sufficient evidence for a reasonable jury to return a verdict finding that Wright informed Honeywell that his belief was religious.

V

For the foregoing reasons, we REVERSE the district court's grant of summary judgment as to Wright's Title VII religious discrimination claim and REMAND for further proceedings consistent with this opinion.