# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 13, 2013

No. 12-20214

Lyle W. Cayce
Clerk

KAWALJEET K. TAGORE,

Plaintiff-Appellant

v.

UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; FEDERAL PROTECTIVE SERVICE; UNITED
STATES OF AMERICA DEPARTMENT OF THE TREASURY - INTERNAL
REVENUE SERVICE,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, DENNIS, and HIGGINSON, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Kawaljeet Tagore ("Tagore") was refused permission to wear a kirpan (a
Sikh ceremonial sword) with a blade long enough to be considered a "dangerous
weapon" under federal law inside the federal building where she worked for the
Internal Revenue Service ("IRS"). She lost her job by failing to comply with the
applicable regulations or receive an appropriate waiver. Tagore sued the United
States and various federal agencies and employees, alleging violations of her
religious rights protected by Title VII, 42 U.S.C. §§ 2000e *et seq*., and the
Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq*. The

No. 12-20214

district court granted summary judgment in favor of the government defendants on both claims. We affirm summary judgment on Tagore's Title VII claim. We reverse and remand her RFRA claim for further development of evidence concerning the government's compelling interest in enforcing against this plaintiff the statutory ban on weapons with blades exceeding 2.5 inches. 18 U.S.C. § 930(a), (g)(2).

## I. BACKGROUND

In 2004, Tagore was hired as a revenue agent for the IRS in the George "Mickey" Leland federal building ("Leland building") in Houston, Texas. In April 2005, she participated in an *Amrit Sanskar* ceremony, pursuant to which she was formally initiated into the Sikh faith. Following the ceremony, Tagore began wearing the five articles of the Sikh faith, including an approximately 9-inch kirpan, a Sikh article that "resembles a knife or sword but, unlike those objects, often has an edge that is curved or blunted."

On her first day back at work after taking *Amrit*, Tagore passed through security without setting off the metal detector and proceeded to her office. After Tagore informed her supervisor, Nieves Narvaez ("Narvaez"), that she was wearing her kirpan, Narvaez instructed her to request a security waiver. He told Tagore to explain that she had recently been baptized into Sikhism and needed to carry the five articles of faith, including the kirpan, on her person at all times. Thereafter, Tagore began wearing a shorter kirpan with a blade approximately 3 inches long in hopes that it would alleviate the security concerns.

Two days later, Tagore provided Narvaez a letter from Amardeep Singh Bhalla ("Bhalla"), Legal Director for the Sikh Coalition, which explained that wearing the kirpan is a mandatory article of the Sikh faith. The letter asserted that kirpans are less dangerous than scissors, box cutters, or other objects that are regularly brought into federal buildings. Narvaez forwarded Tagore's

No. 12-20214

request for a security waiver to Micralyn Baker-Jones ("Baker-Jones"), an IRS labor specialist.  After discussing the issue with Baker-Jones, Narvaez placed Tagore on an interim Flexiplace arrangement so she could work at home until the matter was resolved.

The Federal Protective Service ("FPS") advised Baker-Jones that 18 U.S.C. § 930(a) proscribes the knowing possession of "a firearm or other dangerous weapon in a Federal facility," and that the term "dangerous weapon" is defined by § 930(g)(2) as "a weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury, except that such term does not include a pocket knife with a blade of less than 2 ½ inches in length."  FPS determined that Tagore's kirpan qualified as a "dangerous weapon" due to its 3-inch blade.  The FPS also decided that Tagore's kirpan did not fall within any of the statutory exemptions.  *See* § 930(d)(1)–(3) (providing exemptions for (1) government officers acting in "lawful performance of official duties," (2) federal and military officials, "if such possession is authorized by law," and (3) other persons, if possession is "incident to hunting or other lawful purposes"). The FPS denied Tagore's request for a security waiver.

The IRS then convened a working group to determine whether Tagore's religious exercise of wearing a kirpan could be accommodated in a way that would not violate federal law.  To assist in that process, Narvaez emailed Tagore to inquire whether she would consider (1) wearing a kirpan with a blade shorter than 2.5 inches, (2) wearing a dulled blade, (3) wearing a dulled blade sewn in its sheath, (4) wearing a 'symbolic kirpan' encased in plastic or lucite, or (5) leaving her kirpan at home or in her car while she was in a federal building. Sikh Coalition attorney Bhalla responded on Tagore's behalf.  He noted that Tagore's kirpan already contained a dull blade and that the remaining accommodations would violate her conscience or religious mandates.

3

No. 12-20214

The IRS working group considered whether Tagore could work from home or be reassigned to a federal building without on-site security. Both ideas were rejected, however, because § 930(a) applies to nonsecure federal buildings and a permanent Flexiplace arrangement was not compatible with Tagore's job responsibilities. Seeing no other feasible option, the IRS directed Tagore to report to work at the Leland building without her kirpan by January 30, 2006, or be charged Absent Without Leave ("AWOL"). On January 24, Bhalla responded that "[i]n order to accommodate the IRS, the 'bladed' part of Ms. Tagore's kirpan is now three and one half inches long" and expressed that Tagore "sincerely believe[d] that any further reduction in the size of her kirpan . . . would violate[] her sincerely held Sikh religious beliefs." When Tagore attempted to report to work at the Leland building with her kirpan, she was denied entry. The IRS declared her AWOL and stopped paying her salary. In March 2006, after an unsuccessful mediation, Tagore filed a Title VII charge with the United States Treasury Department. She alleged that the IRS had discriminated against her on the basis of religion by not allowing her to enter the Leland building while wearing her kirpan and declaring her AWOL. On May 4, the IRS issued Tagore a "Notice of Proposed Adverse Action," informing her of its intent to terminate her employment. She was formally terminated on July 11, 2006.[1]

Tagore then filed suit in district court against the United States and several federal agencies and employees,[2] alleging that the defendants violated her rights under Title VII and RFRA. The district court dismissed several of Tagore's

---

[1] Tagore exhausted internal administrative EEOC remedies.

[2] The Complaint names as defendants the United States; four federal agencies (the Department of the Treasury ("DOT"), Department of Homeland Security ("DHS"), FPS, and IRS); two cabinet secretaries; and several federal employees (William A. Carmody, III, David Hiebert, Christina Navarete-Wasson, Sergio Arellano, James K. Ellis, Nieves Narvaez, and 25 unidentified persons referred to as the "Doe defendants").

No. 12-20214

claims.[3] These rulings left two live claims: the Title VII religious discrimination claim against Treasury Secretary Jacob Lew ("Lew"),[4] and the RFRA claim against the FPS, Department of Homeland Security ("DHS"), the DHS Secretary, William Carmody III, David Hiebert, and 25 unidentified defendants. After discovery, the parties filed cross-motions for summary judgment. The district court, writing comprehensive opinions, granted summary judgment in favor of the defendants on both claims, denied Tagore's motion for reconsideration, and dismissed the case with prejudice. Tagore timely appealed.

## STANDARD OF REVIEW

We review a district court's summary judgment *de novo,* applying the same standard as the district court. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Summary judgment is warranted if, viewing all evidence in the light most favorable to the non-moving party, the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3] The district court dismissed Tagore's Title VII retaliation claim, individual-capacity claims, Title VII religious discrimination claim against all defendants except the Treasury Secretary, and RFRA claims against the IRS and DOT. Tagore does not challenge any of these dismissals in this appeal.

[4] Lew replaced Timothy Geithner during the pendency of this appeal.

## DISCUSSION

**1.    Sincerely held religious belief.**

On appeal, Tagore asserts that her evidence creates a genuine issue of material fact concerning the sincerity of her religious practice of wearing a kirpan with a blade longer than 2.5 inches.  The sincerity of a plaintiff's belief in a particular religious practice is an essential part of the plaintiff's prima facie case under either Title VII or RFRA. *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000)(Title VII); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428, 126 S.Ct. 1211 (2006)(RFRA). After reviewing hundreds of pages of deposition testimony and exhibits, the district court concluded that Tagore did not create a triable issue of fact that her sincere religious beliefs require her to wear a kirpan with a 3-inch, rather than the statutorily permitted 2.5-inch,  blade.  With due respect to the able court, this is slicing too thin.

This court recently explored the threshold inquiry into a person's beliefs when discussing a prisoner's claim under the related Religious Land Use and Institutionalized Persons Act ("RLUIPA").  *Moussazadeh v. Tex. Dept. of Criminal Justice*, 703 F.3d 781, 790-92 (5th Cir. 2012).  Briefly, each case turns on its particular facts.  *Id.* at 791.  The specific religious practice must be examined rather than the general scope of applicable religious tenets, and the plaintiff's "sincerity" in espousing that practice is largely a matter of individual credibility.  *Id.* at 792.  In fact, the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged. *Id.* at 791.  As *Moussazadeh* explains, "[t]hough the sincerity inquiry is important, it must be handled with a light touch, or 'judicial shyness.' " *Id.* at 792 (quoting *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 262 (5th Cir. 2010)).  "[E]xamin[ing] religious convictions any more deeply would stray into the realm of religious inquiry, an area into which we are forbidden to tread."  *Id.* (fn. omitted).  Both

before and following *Moussazadeh*, claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions. *See, e.g., Garner v. Kennedy*, 713 F.3d 237, 241 (5th Cir. 2013) (Muslim prisoner's desire to wear a beard not challenged by TDCJ); *Betenbaugh*, 611 F.3d at 261-62 (Native American schoolboy wearing long hair a sincere religious belief; Texas RFRA parallels RFRA); *Mayfield v. Tex. Dept. of Criminal Justice*, 529 F.3d 599 (5th Cir. 2008) (Odin worshiper's religious need for runestones and rune literature not challenged by TDCJ).

There was ample evidence to create a genuine issue of material fact on the sincerity of Tagore's practice of wearing a kirpan with a 3-inch blade. The court's contrary decision focused on close questioning of Tagore in her deposition, which exhibited some ambiguity about whether her sincere beliefs require the kirpan blade, or the entire dagger, to exceed 3 inches. *Cf. Moussazadeh*, 703 F.3d at 792 ("stray[ing] from the path of perfect adherence" does not eviscerate claim of sincerity). She adduced voluminous evidence from the Sikh community, however, that kirpans are mandated to be worn by the religion's adherents and although there are no detailed regulations for the kirpans' appearance, most Sikhs wear kirpans with blades longer than 2.5 inches. As the government acknowledged during the pendency of this appeal:

> There is no prescribed blade length for the *Kirpan*; its size varies based on personal choice. The majority of *Kirpan* blades range in size from 3 to 6 inches, but blades may be as small as 2 inches. . . . *Kirpan* are always sheathed. . . . [S]ome Sikhs . . . believe a *Kirpan* must be worn at all times . . . .

Federal Protective Service, Policy Directive 15.9.3.1, Prohibited Items Program, Attachment 5 (2012) [hereafter, "Policy Statement"]. Tagore has worn her kirpan 24 hours a day after taking Amrit, with one exception when she travelled in an airplane. Tagore was willing to sacrifice her government employment for the sake of wearing a religiously significant symbolic kirpan. Tagore's actions,

the independent evidence of Sikh practices, and the government's acknowledgement create a genuine issue of material fact as to her sincere belief in wearing a 3-inch bladed kirpan.

**2.     Title VII**.

Title VII prohibits an employer from discriminating against an employee on the basis of her religion, unless the employer is unable to reasonably accommodate the employee's religious exercise without undue hardship to its business. 42 U.S.C. §§ 2000e-2(a)(1),  2000e(j).  To establish a prima facie case of religious discrimination under Title VII, the plaintiff must present evidence that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement.  *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499 n.9 (5th Cir. 2001).

Assuming Tagore held a sincere religious belief in wearing a kirpan with a blade exceeding 2.5 inches, a prima facie case of Title VII religious discrimination exists because she lost her job as a result of her religious practice. The district court found this claim inadequate as a matter of law, however, on two additional grounds:  the DHS and FPS, not the IRS, control decisions concerning federal building security and the application of Section 930(a); and the IRS proved the affirmative defense that it could not accommodate Tagore's wearing of the kirpan without undue hardship.  Both of these holdings must be sustained.  First, because the IRS is not authorized to determine the security requirements of federal buildings, it cannot be deemed legally responsible for discriminating against Tagore.  Requiring IRS to override the DHS/FPS would place the revenue agency in the position of violating federal law concerning the introduction of "dangerous weapons" into federal buildings.  An employer need not accommodate an employee's religous practice by violating other laws.  *See*

*Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (defendant need not accommodate plaintiff's religious beliefs when doing so would require defendant to violate federal law, which creates an undue hardship); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830-31 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."); *United States v. Bd. of Educ.*, 911 F.2d 882, 890-91 (3d Cir. 1990) (holding that allowing a Muslim teacher to wear religious garb while teaching, thereby violating a state criminal statute, would impose undue hardship on defendant school district).

Even if these defenses were not definitive, the FPS and DHS demonstrated that the accommodations that Tagore proposed to allow her to continue to wear her kirpan amount to more than "de minimis" costs on the employer. Title VII does not require religious accommodations that impose more than "de minimis" costs on an employer. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 97 S. Ct. 2264 (1977); *Bruff*, 244 F.3d at 501. In part, this is because costly accommodations would place the religious practitioner in a more favorable position, at the employer's expense, than her coworkers. Further, more than de minimis adjustments could require coworkers unfairly to perform extra work to accommodate the plaintiff. Tagore suggested three potential accommodations: wearing a dulled kirpan blade; working from her home; or working at other federal buildings that might have fewer security requirements. As the district court held, none of these is a de minimus measure. Security officers cannot be asked to ascertain whether a blade is sharp or dull in order to determine whether it is a "dangerous weapon" within the purview of Section 930(a); this inquiry would be time-consuming, impractical and detrimental to the broad vigilance required at the entrance to public offices. The IRS also determined, and Tagore does not seriously challenge, that she could not effectively perform

her duties while working from home.  Moreover, the option of her working from other federal facilities is unavailable because Section 930(a) is an across-the-board prohibition of dangerous weapons; it is not facility-specific.  For these reasons, the IRS's failure to accommodate Tagore did not violate Title VII as a matter of law.

### 3.     RFRA.

Assuming, again, that Tagore succeeds in establishing a sincerely held religious belief that mandates her wearing a 3-inch kirpan blade, the remaining predicate to a prima facie RFRA case is whether the FPS's enforcement of Section 930(a) substantially burdened her religious practice.  *See Gonzales*, 546 U.S. at 428, 126 S. Ct. at 1216.  This is not a serious hurdle: she gave up her job rather than wear a shorter-bladed kirpan, *cf. Sherbert v. Verner*, 374 U.S. 398, 403-06, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963), and she risked violating federal law when she entered the Leland building while wearing it. 18 U.S.C. 930(a)(imposing a fine and up to 1 year imprisonment).  Once a prima facie case is established, the government must show a compelling interest in enforcing that provision and that its means are the least restrictive to achieve its objectives.  42 U.S.C. § 2000bb-1(a)-(b)(1) and (2); *Gonzales*, 546 U.S. at 424. RFRA thus applies strict scrutiny to government regulations that substantially burden a person's religious exercise.

Surely, the government has a compelling interest in protecting federal buildings and the people in and around them, and Congress's choice in defining "dangerous weapons" that cannot be introduced into the buildings to include bladed instruments exceeding 2.5 inches must be given significant deference. The Supreme Court emphasized in *Gonzales*, however,  that RFRA requires the government to explain how applying the statutory burden "to the person" whose sincere exercise of religion is being seriously impaired furthers the compelling governmental interest.  546 U.S. at 430-31.  A "categorical approach" is

insufficient, particularly if, as here, the statute includes exceptions to the prohibition,[5] *cf. id.* at 430-37, and the government must produce evidence justifying its specific conclusion.  The district court held that the government carried its burden as a matter of law with affidavit testimony that building security officers must apply Section 930(a) uniformly, consistently and rigorously;  authorizing individualized case-by-case determinations would undermine security.

The district court also held that the need for  uniformity of application satisfied the least restrictive means test.  Although the Supreme Court did not reach the less restrictive means test in *Gonzales*, it is settled that the government's is to explain "why alternative policies would be unfeasible, or why they would be less effective in maintaining institutional security." *Spratt v. R.I. Dept. of Corr.*, 482 F.3d 33, 41 (1st Cir. 2007).  The district court rejected Tagore's citations to case law and instances in which Sikhs wearing kirpans have been granted permission to enter federal buildings, including the White House.  Such examples, the court held, reflect isolated  exceptions rather than the blanket individual exemption for which Tagore contends.  The court also rejected Tagore's argument that she is covered by the exception in Section 930(g) that allows the bearing of "dangerous weapons" for "other lawful purposes."  In this regard, it accepted the government's argument that this exception only extends to people like construction workers whose job-related duties require tools that might otherwise violate the statute.

We recite very briefly the district court's reasoning as preface to the point that it has been practically undermined by FPS's decision to acknowledge

---

[5] As has been noted, 18 U.S.C. § 930(a) does not apply to law enforcement officers, military personnel, and those lawfully carrying weapons incident to hunting or other lawful purposes.  18 U.S.C. § 930(d).  We agree with the court's determination that Tagore's kirpan is not permitted under the exceptions to Section 930(a) for law enforcement officers, military personnel, and hunters.  We express no opinion as to whether Tagore's kirpan would be permitted under the subsection for "other lawful purposes."

kirpans as ceremonial weapons that may be allowed in a federal building either by exception or exemption from the statute. The December 2012 FPS Policy Statement, earlier noted, "establishes FPS policy for applying security force countermeasures to mitigate prohibited item entry at Federal properties." Policy Statement at 1. The statement repeatedly references processes that "include[] allowing exceptions and exemptions to prohibited items for . . . religious exercise . . . or other purposes as necessary or required by law." Attachment 2 to the statement prescribes "Procedures for Exceptions and Exemptions for Otherwise Prohibited Items," Policy Statement at 5, one of which is for "accommodations" under the Religious Freedom Restoration Act. Attachment 5 describes "Accommodations for Sikh Articles of Faith," and instructs FPS officers that kirpans with blades longer than 2.5 inches require an exception or exemption before being carried into a federal building. One must ask, why refer to "accommodations" and append this attachment to a document describing procedures for obtaining exceptions or exemptions if, as FPS contends against Tagore, case-by-case determinations are impractical or inconsistent with maintaining security? The fact that FPS promulgated this Policy Statement after the case concluded in the district court does not prevent our taking judicial notice of its implication for the difficult and fact-sensitive inquiry that must accompany application of strict scrutiny under RFRA.

Because the new policy contradicts the arguments previously advanced by the government for denying Tagore an exception or exemption for the wearing of her kirpan to the Leland building, the district court's application of strict scrutiny must be reversed and remanded for further analysis.

In so doing, we emphasize that we express no opinion on the ultimate application of strict scrutiny because the government should be allowed to offer more evidence concerning its asserted need for uniform application of Section 930(a) and the impact of the new Policy Statement on this case.

No. 12-20214

Precisely because kirpans may be dangerous weapons in the wrong hands or may fall into the hands of evildoers who are not Sikhs, there would seem to be support for certain limitations, *e.g.* on blade length, security clearance status of the bearer of the kirpan, the frequency of the bearer's visits to a particular federal facility, the degree or method of concealment, or degree of attachment to the person's body. All of these considerations, and more, may bear on the fact-intensive nature of the RFRA strict scrutiny test. Despite the importance of deferring to officials charged with maintaining domestic security, conclusional affidavits will be insufficient to overcome the policies and procedures embodied in RFRA.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed in part and remanded in part; further proceedings are necessary to determine as a matter of fact whether Tagore holds a sincere religious belief in wearing a kirpan with a blade exceeding the federally prescribed maximum and, if so, whether the government has proven that application of Section 930(a) to Tagore furthers a compelling government interest with the least restrictive means.

AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.