# United States Court of Appeals for the Fifth Circuit

_____

No. 24-20174
_____

Tisha Palms,

*Plaintiff—Appellant*,

*versus*

Texas Children's Hospital, Incorporated,

*Defendant—Appellee*.

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2025

Lyle W. Cayce
Clerk

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-3992

_____

Before Dennis, Haynes, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Tisha Palms has worked as a radiographer and radiology specialist at Texas Children's Hospital (TCH) for over twenty-two years. On September 20, 2022, TCH implemented a flu shot mandate for its employees. Palms requested an accommodation from this mandate on religious grounds, which

---

[*] At the request of our dissenting colleague, this opinion is designated for publication. *See* 5th Cir. R. 47.5.2 ("An opinion will be published unless each member of the panel deciding the case determines that its publication is neither required nor justified under the criteria for publication."). The panel majority would decline to publish.

No. 24-20174

TCH initially denied because Palms allegedly failed to adequately explain how her beliefs conflicted with the vaccine mandate. The day before TCH planned to suspend Palms under the vaccine mandate, she filed this suit, bringing a Title VII claim for failure to accommodate, amounting to religious discrimination. Palms attached to her complaint an affidavit explaining how her religious beliefs had evolved to prevent her from receiving the flu vaccine that year when it had not previously. Accordingly, two days after the suspension went into effect, TCH granted her an accommodation, which she accepted. Palms continued the suit without amendment.

The district court granted summary judgment on Palms' Title VII failure-to-accommodate claim because it is undisputed that THC granted Palms a religious accommodation, which she accepted. On appeal,[1] Palms appears to challenge that ruling. But she does not address the district court's analysis or explain how it erred. *See Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (finding that appellant forfeited an argument by failing to address the district court's analysis and explain how it erred). Indeed, in her one-paragraph discussion of the issue, she never states that TCH's offered accommodation was unreasonable or explains why the district court could not dismiss her claim on this ground. More glaringly, Palms offers no citations to caselaw or relevant legal authority to support her "argument," whatever it may be. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (holding that a party forfeits an argument when it fails to "offer any supporting argument or citation to authority" or to "identify relevant legal standards and any relevant Fifth Circuit cases") (quotation omitted). Because Palms failed to adequately brief any argument regarding the district court's finding that THC's offer of a

---

[1] Our review is de novo. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004) (citation omitted).

No. 24-20174

reasonable accommodation merited summary judgment, she has forfeited it. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

The dissenting opinion (including its citation to cases) addresses a majority opinion of its own invention—one that bears no resemblance to the opinion we issue today. This court regularly relies on *Rollins v. Home Depot* when a party's briefing is woefully inadequate. And no exception to *Rollins* arises merely because "our task is the de novo review of the summary judgment record." *Post*, at 10. We see no reason to depart from settled practice in this case. While we deeply respect religious beliefs, including Harmon's, "[w]e should decide like cases alike" and apply *Rollins* as we would in any other case. *Id.* at 14.[2]

The district court's judgment is AFFIRMED.

---

[2] Thus, we are not addressing the merits of Harmon's claims since she failed to file an adequate brief.

No. 24-20174

Kurt D. Engelhardt, *Circuit Judge*, dissenting.

Religious discrimination is religious discrimination, even if it stops. But the majority holds that when an employer eventually and undisputably stopped discriminating, after it was sued, the employee forfeits arguments on appeal related to all past discrimination. Not so. Moreover, that legal trick-box deprives an employee of the ability to pursue her meritorious claim of religious discrimination.

Because I do not think Appellant forfeited her claim, and because the claim that her employer unduly questioned the sincerity of her religious beliefs has merit, I dissent.

## I.

Since 2000, Tisha Palms was employed by Texas Children's Hospital ("hospital"). In September 2022, the hospital implemented a Required Influenza Vaccination Policy ("Policy"), its flu shot mandate, for its employees. To comply with the Policy, hospital employees needed to either (1) receive and present proof of receipt of the flu vaccine, (2) have an approved religious exemption to the vaccine, or (3) have an approved medical exemption to the vaccine. Employees had approximately two months from the release of the new Policy to comply. Employees who failed to obtain compliance by that time would be placed on unpaid leave and subsequently terminated.

Palms voluntarily elected to receive the flu vaccine for 20 years. She chose not to receive the vaccine in 2021. When the Policy was released in 2022, she sought a religious exemption from the vaccine. The hospital's form to request a religious exemption asked employees to: (1) describe in their "own words" their "deeply held religious beliefs, practices, or observances that prevent [them] from receiving the influenza vaccine" without "copy[ing] and past[ing] from the internet;" and (2) if they had received the

flu vaccine in the past, "describe how and why [their] beliefs, practices, or observances may have changed." Palms described her religious beliefs but did not comply with the latter request: explain why she had received the flu vaccine in the past yet now claimed an exemption and no longer wanted to receive it.

While the hospital acknowledged Palms' strong religious beliefs, it determined that because Palms had not articulated how her beliefs *changed* from when she previously received the vaccine to her current request for exemption, it could not determine whether she had sincere religious beliefs that conflicted with receipt of the flu vaccine. It denied her request for a religious exemption and placed her on unpaid leave as a prelude to termination. This, despite recognizing and granting Palms an exemption to the COVID-19 vaccine for her religious beliefs only a year earlier. That the hospital recently granted Palms a religious exemption to the COVID-19 vaccine based on the same religious beliefs in 2021 establishes that the hospital well-knew the sincerity of Palms' religious beliefs.

Palms sued the hospital. The next day, the hospital suspended Palms without pay for failure to receive the flu vaccine.

Attached to Palms' complaint in the lawsuit was an affidavit that included an explanation for why the vaccine was against Palms' religious beliefs, despite taking the vaccine in the past. Though it had previously recognized and granted Palms' religious exemption to the COVID-19 vaccine, the hospital then determined that the affidavit cured the prior deficiency in Palms' religious exemption request. It informed Palms that it was granting her religious exemption and that she could return to work so long as she wore a surgical mask for the remainder of that flu season and

No. 24-20174

future flu seasons. [1] Palms complied with wearing a mask and was permitted to return to work after four days of unpaid administrative leave. [2] Palms is still employed by the hospital as a radiology specialist today.

The hospital moved for summary judgment. The district court entered a memorandum opinion and order granting the hospital's summary judgment motion in full and entered a final judgment. It held that Palms failed to establish a *prima facie* case for her Title VII failure to accommodate claim. Further, the district court held that even if Palms established a *prima facie* case, the claim failed because the hospital promptly accommodated Palms' request once she explained how her beliefs had changed.

## II.

I note, first, the portions of the holding with which I agree. It is undisputed that in November 2022, Palms returned to work and that the accommodation provided was that she needed to wear a mask during flu season rather than receive the flu vaccine. And it is undisputed that it was not an undue hardship on the hospital to provide that accommodation. [3] Palms accepted the accommodation and remains employed by the hospital today. Even so, it is also undisputed that, for a time, Palms was placed on unpaid

---

[1] The majority suggests that Palms should have amended her complaint once she was reinstated by the hospital. Maj. Op. at 2. It is unclear what amendment the majority expected Palms to make. No element of her claim changed after she was reinstated. Palms is still pursuing the same Title VII claim against her employer for the religious discrimination that occurred before her reinstatement. This claim is clearly and adequately raised in Palms' original complaint.

[2] Palms was placed on administrative leave for four days. Two of those days were Saturday and Sunday. It is unclear from the record whether Palms, as a hospital employee, attended work on weekends.

[3] "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

6

leave because she refused the flu vaccine for previously recognized religious reasons.

Where I depart from the majority is, in my view, the hospital did not provide a full accommodation to Palms in less than one week. The hospital was obligated to accommodate Palms when she submitted her request for a religious exemption. It shirked that responsibility and failed to accommodate Palms for approximately two months. Then, the hospital provided an accommodation only *after* Palms had been placed on unpaid leave, and *after* she initiated a lawsuit against it. Palms is entitled to seek relief for the religious discrimination that occurred.

Yet the majority opinion wrongly views that the only relevant unit of analysis is whether the *eventual* accommodation was reasonable. So, according to the majority, if an employee fails to make an argument for why that *eventual* accommodation was unreasonable, she forfeits her Title VII claim.[4] But this case is not about the reasonableness of the eventual accommodation. Rather, the proper unit of analysis is the intervening days during which the employer failed to provide an accommodation at all, subjected the employee to a probing religious test, and eventually placed the employee on unpaid leave, all while being well-familiar with her religious beliefs.

---

[4] While the majority rests on forfeiture, its argument seems more akin to mootness because it argues an employee has no Title VII claim when her employer eventually provided a reasonable accommodation. Maj. Op. at 3. *Compare Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 824 (5th Cir. 2025) (quotation marks omitted) ("When a complaining party manages to secure outside of litigation *all* the relief he might have won in it, the case is moot"), *with United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right . . . ."). Regardless of the doctrine at play, discrimination need not be continuous to constitute an actionable claim.

Palms' claim for discrimination arising from those intervening days is not forfeited. In her opening brief, Palms argues the timing of the hospital's accommodation was unreasonable because it caused her to be impermissibly "suspended without pay" due to her religious beliefs. She explains, "[t]he trial court fails to appreciate that [the hospital] reconsidered it actions only after Ms. Palms hired a lawyer, filed her Complaint, and filed a Motion for Temporary Restraining Order and Preliminary Injunction, requesting that [the hospital] be temporarily enjoined from terminating her for failing to receive the flu shot." And Palms cites the statute being violated, stating that "she is seeking compensation for violations of her right under 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j)." That statute makes it "unlawful" for an employer "to discharge any individual . . . with respect to his . . . religion." 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). Palms seeks an "[a]ward . . . [of] damages, including back pay . . . punitive damages, and compensatory damages" as well as an "[a]ward . . . [of] reasonable attorney's fees and costs."

As a backstop, the majority discards Palms' claim as *de minimis*, i.e., "two days after the suspension went into effect, TCH granted her an accommodation, which she accepted." Maj. Op. at 2. That is wrong, too. The duration of discrimination Palms faced goes to the amount of damages to which Palms may be potentially entitled, not whether she stated a claim.[5] We

---

[5] *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) (holding that the purpose of Title VII is to fashion "the most complete relief possible" and that "given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination"); *see also Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 631 (5th Cir. 1983) (holding that the district court abused its discretion in failing to award back pay to plaintiffs, because the "purposes of Title VII command back pay relief in all but 'special' circumstances"); *Claiborne v. Ill. Cent. R. R.*, 583 F.2d 143, 149 (5th Cir. 1978) ("The aim of Title VII relief, whether back-pay, retroactive seniority, or other

should not disallow a religious discrimination claim because the discrimination stopped when the employer was sued. *See* 42 U.S.C. § 2000e–5(g) (emphasis added) ("If the court finds that the respondent *has* intentionally engaged in *or is* intentionally engaging in an unlawful employment practice" the court may "order such affirmative action as may be appropriate, which may include, but is not limited to . . . back pay."). While the majority might be comfortable endorsing this in the cause of vaccination—and when the discrimination at issue is religion-based—I wonder whether anyone would endorse this concept in any other context involving discrimination, say by race, sex, or disability. Discrimination is discrimination, regardless of duration. *See Figgs v. Quick Fill Corp.*, 766 F.2d 901, 902 (5th Cir. 1985) (affirming the district court's award for back pay from the date of plaintiff's dismissal to the date of her reinstatement in the context of a plaintiff who brought a Title VII race discrimination claim); *see also Clanton v. Orleans Par. Sch. Bd.*, 649 F.2d 1084, 1092 (5th Cir. 1981) (affirming the district court's grant of "backpay from the date upon which [plaintiffs] were willing and fit to work until the date of their reinstatement" in the context of plaintiffs who brought a Title VII sex discrimination claim).

Indeed, the U.S. Supreme Court just last year held that "[d]iscriminate against" in Title VII entails no "threshold of harm" to state a claim. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). "There is nothing in the provision to distinguish . . . between [employer actions] causing significant disadvantages and [employer actions] causing not-so-significant ones." *Id*. "'Discriminate against' means treat worse," here based on religion. *Id*. Because of Palms' religion, she was subject to a religious test by her employer's human resources department and was

---

injunctive relief, is thus to make whole the victims of discrimination according to what would have been their experience in a non-discriminatory work setting.").

ultimately denied an accommodation for approximately two months, resulting in multiple days of unpaid leave in addition to the stated threat of termination. For weeks, Palms worked under the stress of knowing she might lose her job because of her religious beliefs. According to the Supreme Court, that treatment is enough to make out a Title VII discrimination claim.

Palms clearly argues in her opening brief that the hospital's decision against providing an accommodation which resulted in multiple days' unpaid leave was a failure to provide a reasonable accommodation for her religion. I do not share the majority's willing blindness to this when it states that "she does not address the district court's analysis or explain how it erred." Maj. Op. at 2. That Palms' brief is adequate is recognized by the hospital, which did not argue or even mention forfeiture of arguments under *Rollins*; to the contrary, the hospital responded with a 25-page comprehensive engagement of Palms' brief, joining issue accordingly with full understanding of Palms' arguments. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).[6] Further, our task is the de novo review of the summary judgment record as compiled in the district court, so those pleadings too inform our understanding of the case. *See Tango Transp. v. Healthcare Fin. Servs.*, 322 F.3d 888, 890 (5th Cir. 2003). In my opinion, Palms' brief more than adequately explains how she believes the district court erred, and the principles upon which her arguments are based. That is hardly forfeiture.

---

[6] The hospital's brief argues that Palms waived her Title VII retaliation claim and her Title VII disparate treatment claim. It explains: "Palms wholly failed to address either of these claims in her brief. She has therefore abandoned these claims on appeal." Yet, despite the majority's view, the hospital never asserts that Palms' Title VII failure to accommodate claim was abandoned on appeal, either by way of inadequate briefing or failure to brief.

### III.

Turning to the dispute over whether Palms asserted a Title VII failure to accommodate claim: To establish a *prima facie* case of religious discrimination, a plaintiff asserting a failure to accommodate claim under Title VII need *only* satisfy the following elements: "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (internal citation omitted). At this summary judgment stage, all those elements were met.

There can be no question as to the sincerity of Palms' religious beliefs. Her employer, the hospital, does not dispute that Palms held a bona fide religious belief, admitting that "Palms always had strong religious beliefs." The hospital also previously granted Palms a religious exemption to the COVID-19 vaccine based on the same religious beliefs only a year before denying her religious exemption to the flu vaccine. That fact fully establishes the hospital's appreciation of Palms' bona fide religious belief. It is also undisputed that the hospital received Palms' request for a religious exemption to the flu vaccine and that Palms was placed on unpaid leave because she refused to receive the vaccine.

The hospital reasoned that because Palms received the vaccine in the past, there was no good reason she could refuse to receive it again. Unless, of course, she explained her religious beliefs to the employer's satisfaction. That is itself religious discrimination.

It is unsurprising that such a proposition—the requirement that Palms articulate how her beliefs *changed* from when she previously received the flu vaccine to her current request for an exemption—is unsupported by the

caselaw of this court and that of the U.S. Supreme Court. Neither has ever required an employee to adequately explain a *change* in behavior when proving how her religious views conflict with an employment requirement. In fact, principles of this court's precedents foreclose imposing such a requirement when establishing sincerity of religious belief. We have held, for example, that "[a] showing of sincerity does not necessarily require strict doctrinal adherence to standards created by organized religious hierarchies." *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012), *as corrected* (Feb. 20, 2013). In *Moussazadeh*, a prisoner sought kosher meals arguing that it was part of his duty to only eat kosher meals according to his Jewish faith. *Id.* at 784. The inmate in that case had, on some past occasions, purchased non-kosher food items including cookies, soft drinks, coffee, tuna, and candy. *Id.* at 791. In that context, this court determined that those past actions did not make Moussazadeh's current beliefs insincere. *Id.* There is no reason why that principle should not apply here.

*Moussazadeh* directly forecloses any argument that Palms failed to establish a sincerely held belief because she had been vaccinated against the flu in the past.[7] *Moussazadeh's* reasoning applies equally in the context of an employee notifying an employer of a conflict between a sincerely held religious belief and an employment policy. An employee, when notifying that a sincerely held belief conflicts with an employment practice, need not demonstrate why her past actions conflict with her current religious beliefs, contrary to the very import of Title VII.

---

[7] "The sincerity of a plaintiff's belief in a particular religious practice is an essential part of the plaintiff's prima facie case under either Title VII or RFRA," and "the related Religious Land Use and Institutionalized Persons Act ('RLUIPA')." *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 477 (2023).

Moreover, this court recently held that the following language, included in employees' religious exemption requests to the COVID-19 vaccine, was sufficient to inform employers that their employees' religious beliefs were in conflict with a vaccination requirement. In *Sibley*, an employee explained that she:

> "retain[ed] and reserve[d] all of [her] God-given rights including sole possession and sole use of all [her] biological materials which are granted to [her] by [her] Creator." She further stated that those rights included "the right to decline all attempts to access, influence and or otherwise alter any and all of [her] God given biological material and or biological systems which are unique, flawless and original in design and craftsmanship[.]" Thus, Sibley explained that she "require[d] that any and all products offered to [her] by [her] employer or workplace be both entirely retrievable from and also removable in its entirety from [her] body, person, and womanhood at the conclusion of each and every work period[.]"

*Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *2 (5th Cir. Dec. 16, 2024) (brackets and quotation marks in original). Likewise, in *Wright*, an employee wrote in his religious exemption request to the COVID-19 vaccine that, "our creator gave us this gift to choose and decide for ourselves," and also that it is "in our constitution no man should be forced to do something he . . . is not comfortable with." *Wright v. Honeywell Int'l, Inc.*, No. 24-30667, 2025 WL 2218131, at *1 (5th Cir. Aug. 5, 2025). Wright further explained that, while his Christian faith did not "prevent" receipt of the COVID-19 vaccine, "cert[ai]n passages le[ad him] to feel very strongly about" his decision to not receive the vaccine. *Id.* Further, Wright submitted a "third-party attestation of his religious beliefs, completed by his daughter." *Id.* "Citing scripture, his daughter explained, 'It is in our belief that humans should only use things that are created of the earth by God. We believe the vaccine is a claim of the mark of the beast[;] it is man made and

goes against our religion.'" *Id.* This court reversed the district court and held that the employee met his summary judgment burden for his Title VII religious discrimination claim. *Id.* at *4.

Here, Palms provided similar information to the hospital to establish that her religion conflicted with the requirement that she receive the vaccine. Specifically, Palms included the following language in her request for a religious exemption:

> The Bible states in many scriptures, my body is God's temple and as such I should not inject vaccines into my body. God has already provided all of His children with an immune system that is built for that specific reason and because I am a child of God and have faith that He WILL continue to protect me. . . . Therefore, I have a conscious belief and the decision has been made by my family and I that I should not take vaccines because my strong belief in God and the fact that He and He alone protects me.

This explanation, like that in *Wright* and *Sibley*, is enough to put the hospital on notice that Palms' religious beliefs conflict with her taking the flu vaccine. *Wright*, WL 2218131, at *1; *Sibley*, WL 5118489, at *2. We should decide like cases alike.

At the summary judgment stage, Palms has at minimum raised a genuine dispute of material fact for her religious discrimination claim under Title VII.

## IV.

Because I would VACATE the district court's grant of summary judgment, and REMAND to the district court for further proceedings, I respectfully dissent.