# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-25-00325-CV

---

**Muammer David Oksuz, Appellant**

**v.**

**Harmony Public Schools, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-23-003137, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Muammer David Oksuz appeals from the trial court's order granting Harmony Public Schools' plea to the jurisdiction and dismissing all Oksuz's claims against Harmony in this employment-discrimination lawsuit. Because Oksuz raised a fact issue on his religious discrimination claim and Harmony did not seek dismissal of Oksuz's retaliation claim, we reverse the trial court's order dismissing the suit and remand for further proceedings.

### BACKGROUND

Oksuz alleges that Harmony is "a group of charter schools founded and informally affiliated with the Gulen or Hizmet (Service) movement,"[1] which is "situated within" a denomination of Sunni Islam, and that Harmony is run by administrators "who are largely Turkish-American members of the Gulen movement." Oksuz, who is Turkish-American, began

---

[1] Oksuz refers to the movement as both Gulen and Hizmet interchangeably.

working at Harmony on August 9, 2009, as an Assistant Principal, then later served as the District Technology Coordinator for Central Texas.

Oksuz got involved with the Gulen movement in Istanbul in 1991. After being involved with the Gulen movement for 25 years, Oksuz says he left beginning in 2016 by no longer attending the weekly "sohbets," or "religious lecture and discussion groups," and stopping his "himmet," or financial contributions to the movement. Oksuz alleges that upon leaving the movement, he suffered adverse employment decisions—a job transfer to a "dead-end job" outside his "educational qualifications . . . in IT" and three unsuccessful job applications—that culminated in his termination from Harmony on February 10, 2023. He alleges that a Turkish-American Gulenist replaced him in the District Technology Coordinator role and that following at least one of his unsuccessful job applications, Harmony hired a Turkish-American Gulenist instead of him.

Oksuz sued Harmony for religious discrimination for actions taken against him since he "distanced himself from the Gulen Movement." *See* Tex. Lab. Code §§ 21.051 ("Discrimination by Employer"), .108 ("Discrimination Based on Religion"); *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex. 2012) (Chapter 21 is a "comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964, that provides the framework for employment discrimination claims in Texas."). He also sued Harmony for retaliation based on his termination after he filed a charge of discrimination and received his right-to-sue letter. *See* Tex. Lab. Code § 21.055 ("Retaliation"). Oksuz pleaded that he is a member of a protected class and received unfavorable treatment, including his termination, because of his religion; that there is no legitimate, nondiscriminatory reason for Harmony's actions, and that any such reason is mere pretext; that his religion—i.e., the fact that he is no longer part of the Gulen movement—was a determining or motivating factor in

2

Harmony's decision to terminate him; and that he suffered damages as a direct result of Harmony's unlawful actions. *See Beebe v. City of San Antonio by and through CPS Energy*, 673 S.W.3d 691, 697 (Tex. App.—San Antonio 2023, pet. denied) (outlining elements of discrimination claim and citing *Okoye v. University of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).

Harmony filed a combined plea to the jurisdiction and, in the alternative, motion for partial traditional summary judgment, arguing that its governmental immunity was not waived because Oksuz had not established a prima facie case for religious discrimination. Specifically, Harmony asserted that the record established that Oksuz did not consider the Gulen movement to be a religion and that the Gulen movement is not a religion for purposes of a TCHRA claim. Harmony did not raise other arguments about Oksuz's religious discrimination claim, nor did it address or seek dismissal of his retaliation claim. Harmony's alternative motion for partial traditional summary judgment adopted its arguments in the plea to the jurisdiction. Harmony attached several exhibits to its plea and motion, including excerpts from Oksuz's deposition, Harmony's superintendent's affidavit, and Oksuz's responses to discovery requests.

Oksuz filed a response to Harmony's plea and motion, supported by his affidavit, among other exhibits, including many articles on the Gulen movement. Harmony filed a reply, and the trial court heard Harmony's jurisdictional plea. Following the hearing, the trial court ordered that Harmony's "plea to the jurisdiction is hereby granted, and that all of [Oksuz's] claims and requests for relief against Harmony are dismissed with prejudice for lack of jurisdiction." (Capitalization omitted). Oksuz filed a motion for reconsideration, urging that the Gulen movement "is heavily rooted in the religious teachings of Bediuzzaman Said Nursi and Fethullah Gulen" and pointing out that Harmony's plea did not seek to dismiss his retaliation claim. Oksuz's motion was overruled by operation of law, and he perfected this appeal.

3

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Typically, the plea to the jurisdiction challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (*Garcia II*). When, as in this case, the plea to the jurisdiction challenges the existence of jurisdictional facts, then, like the trial court, we "consider evidence as necessary to resolve any dispute over those facts, even if that evidence 'implicates both the subject-matter jurisdiction of the court and the merits of the case.'" *Id.* (quoting *Miranda*, 133 S.W.3d at 226). We review the trial court's order on a plea to the jurisdiction de novo. *City of Houston v. Gomez*, 716 S.W.3d 161, 164 (Tex. 2025).

Harmony is an open-enrollment public charter school and therefore an agency of the State. *See El Paso Educ. Initiative, Inc. v. Amex Props,. LLC*, 602 S.W.3d 521, 529 (Tex. 2020) ("[O]pen-enrollment charter schools act as an arm of the State government."). Thus, Harmony enjoys immunity from suit unless the legislature has waived its immunity. *See University of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). Harmony may assert its immunity through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). The Texas Commission on Human Rights Act (TCHRA), comprising Chapter 21 of the Labor Code, provides a limited waiver of immunity from suit "only when the Plaintiff actually states a claim for conduct that would violate the TCHRA." *Garcia II*,

4

372 S.W.3d at 637; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (*Garcia I*) ("[A]ll the courts of appeals that have considered it have concluded that the TCHRA clearly and unambiguously waives immunity, and we agree."); Tex. Lab. Code § 21.002(8)(d) (defining employer to include state agency or instrumentality).

Because Harmony's plea challenged the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional summary judgment: "[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Clark*, 544 S.W.3d at 771 (quoting *Miranda*, 133 S.W.3d at 225–26). Applying this standard, we credit evidence favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228.

Under the TCHRA, "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. . . ." Tex. Lab. Code § 21.051(1). "[A]n unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice . . . ." *Id.* § 21.125(a). "Due to the dearth of case law interpreting the TCHRA, the Texas Supreme Court has directed Texas courts to seek guidance from federal interpretations of Title VII when construing the TCHRA." *Grant v. Joe Myers Toyota, Inc.*, 11 S.W.3d 419, 423 (Tex. App.—

5

Houston [14th Dist.] 2000, no pet.) (citing *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 232 (Tex. 1993)).

## DISCUSSION

On appeal, Oksuz argues that he presented sufficient evidence in response to Harmony's jurisdictional plea to create a genuine issue of material fact on his religious discrimination claim. He also contends that the trial court erred by dismissing his retaliation claim because Harmony did not seek dismissal of that claim.

### I.     Oksuz raised a fact issue on his religious discrimination claim.

First, Oksuz argues that the trial court erred by dismissing his suit because he raised a genuine issue of material fact on the sole issue that Harmony contended resolved the jurisdictional inquiry presented in its plea: whether the Gulen movement is a protected religious belief that can form the basis for Oksuz's religious discrimination claim. Oksuz points to his affidavit and deposition excerpts in the record, among other evidence, as supporting a reasonable inference that he was subject to adverse employment actions "because of religion."

In the context of an employment discrimination claim, "[b]ona fide religious beliefs include 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'" *Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014) (quoting 29 C.F.R. § 1605.1); *see Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 447 (2023) ("The sincerity of a plaintiff's belief in a particular religious practice is an essential part of the plaintiff's prima facie case under either Title VII or RFRA."). "[T]he belief cannot be 'merely a preferred practice but rather a religious obligation' that the plaintiff sincerely believes he must uphold." *Wright v. Honeywell*

6

*Int'l, Inc.*, 148 F.4th 779, 783 (5th Cir. 2025) (quoting *Mahmoud v. Taylor*, 606 U.S. 522, 547 (2025)).  But the Fifth Circuit has "cautioned that judicial inquiry into the sincerity of a person's religious belief must be handled with a light touch, or judicial shyness."  *Id.* (quoting *Davis*, 765 F.3d at 486).  "To examine religious convictions any more deeply would stray into the realm of religious inquiry, an area into which we are forbidden to tread." *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012) (citing *United States v. Ballard*, 322 U.S. 78, 86–87 (1944)).  "The sincerity of a person's religious belief is a question of fact unique to each case." *Davis*, 765 F.3d at 485.  And "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions." *Id.* at 486.

Ample record evidence provides support for Oksuz's position that the Gulen movement and its beliefs are "in his own scheme of things, religious." *Wright*, 148 F.4th at 784 (quoting *Davis*, 765 F.3d at 485).  For example, Oksuz described the practices in the Gulen movement—which he alleges he participated in for many years—as including daily "collective morning prayer," "repeatedly reciting some of the 99 attributes of Allah, which are specified in the Quran," and "reading of some religious text," as well as "weekly sohbets," which "after a usually short discussion about school and organizational issues, [] focused on religious matters."  His affidavit explained that "[o]utwardly, Hizmet believed in religious and social cooperation and dialogue between people of all belief systems," but "in reality," "in internal Hizmet teachings, people were classified into several valuation groups," including the highest-ranked group: "Hizmet adherents (the only ones who would be able to go to the Paradise in their afterlife)[.]"

Oksuz's deposition testimony includes the following exchange:

Q. What is the Gulen Movement?

A. Gulen Movement for me is a religious movement, but different than the other religious groups in Turkey or the Islamic world. They promote education and science.

Q. Is the Gulen Movement a recognized religion?

A. No.

Q. Do you consider the Gulen Movement to be a religion?

A. Yes.

. . . .

Q. What are the core tenets or beliefs of Hizmet or Gulen?

A. On paper, there's only one God and Prophet Muhammad is his messenger. And we should take his message to everyone – everybody in the world. And classic Islamic representation of the Sunni Islam, every part of that is correct.

. . . .

Q. What is the difference between Hizmet or Gulen and Islam?

A. The most important thing is, I believe, is the Fethullah Gulen himself. Because in the other parts of Islam, someone can be wrong, someone could be right, or it may have different opinions. Here it's all about him. I defined him as a religion, but this is my definition. I believe they are completely different than the others.

Q. So you testified that your definition of Gulen is a religion?

A. Yes.

Harmony urges that the Gulen movement involves "purely secular considerations" or beliefs that are "merely a matter of personal preference," such that the Gulen movement cannot be considered a religion or a protected class for purposes of a TCHRA claim. But under the applicable standard of review, we credit evidence favorable to Oksuz and draw all reasonable inferences in his favor. *See Miranda*, 133 S.W.3d at 228. The evidence described above raises a

8

fact issue as to whether the Gulen movement, to which Oksuz no longer adheres, constitutes a bona fide religious belief such that it may support a prima facie case for religious discrimination under the TCHRA. *See Bellard v. University of Tex. M.D. Anderson Cancer Ctr.*, 716 F. Supp. 3d 503, 513 (S.D. Tex. 2024) ("[T]he court's narrow task is to discern whether the plaintiffs' motivations are religious or, alternatively, driven purely by other motivators couched in religious terms." (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972))); *see also Wright*, 148 F.4th at 784 ("Because a plaintiff's sincerity in espousing a religious practice is largely a matter of individual credibility, Wright's evidence would be better weighed by a jury than by the court at the summary judgment stage." (cleaned up)). Thus, the trial court erred by granting Harmony's plea to the jurisdiction on Oksuz's employment discrimination claim.

We sustain Oksuz's first issue.

## II.     The trial court erred by dismissing Oksuz's retaliation claim.

Next, Oksuz argues that the trial court erred by dismissing his entire suit, pointing out that Harmony did not seek dismissal of his retaliation claim. We agree with Oksuz. Harmony did not seek to establish its immunity from Oksuz's retaliation claim in either its plea to the jurisdiction or its summary-judgment motion; it challenged neither his pleadings nor jurisdictional facts pertaining to the retaliation claim. *See Miranda*, 133 S.W.3d at 226–28 (discussing ways in which state may "extricate itself from litigation if it is truly immune"). Further, at the hearing on Harmony's motion, Harmony's counsel stated, "Just to be clear, we're only arguing regarding the religious discrimination claim. We are not addressing the retaliation claim today."

However, the trial court's order stated that "all of Plaintiff's claims and requests for relief against Harmony are dismissed with prejudice for lack of jurisdiction." Dismissing Oksuz's

9

retaliation claim without first requiring Harmony to assert that the trial court lacks subject-matter jurisdiction was error. *See id.* at 228; *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024) ("[A] plaintiff need not anticipate and defeat every defense the government could conceivably raise" in plea to jurisdiction.); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) ("It is well settled that a trial court cannot grant a summary judgment motion on grounds not presented in the motion."); *see, e.g.*, *Jones v. Angelo State Univ.*, No. 03-14-00112-CV, 2016 WL 3228412, at *7 (Tex. App.—Austin June 10, 2016, pet. denied) (mem. op.) ("Because the University did not move for summary judgment, traditional or no-evidence, on Jones's claim that the University failed to accommodate his religious practice under section 21.108 of the TCHRA, the trial court erred to the extent it granted summary judgment on this claim.").

We sustain Oksuz's second issue on appeal.

## CONCLUSION

Having sustained both of Oksuz's issues on appeal, we reverse the trial court's order dismissing Oksuz's suit for want of jurisdiction and remand the cause to the trial court for further proceedings.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Reversed and Remanded

Filed: March 11, 2026

10